Smith *v.* Hutchison.

---

# Smith *v.* Hutchison.

## (*Jackson.*    April 12, 1900.)

1. BOUNDARY. *Extensions of calls of entry by survey.*

   A line of an elder special entry, whose controlling call is for course and distance, cannot be extended by survey to nearly double its call for distance, thereby embracing more than double the original acreage, so as to defeat or prejudice the intervening rights of a junior special enterer. (*Post, pp. 398, 399.*)

   Cases cited: Fly *v.* College, 2 Sneed, 689; Nolen *v.* Wilson, 5 Sneed, 339; Bleidorn *v.* Pilot Mt., 89 Tenn., 199.

2. SAME. *Calls for course and distance control, when.*

   A call for course and distance controls a call for a stake in the edge of a large lake, where it appears that it would double the length of the line and more than double the acreage of the tract to conform to the latter call, and that the point designated as the edge of the lake is not susceptible of ascertainment and location with any reasonable degree of certainty. (*Post, pp. 395, 399.*)

3. ENTRY. *Special.*

   An entry is special which calls to begin on "a beech tree, the southeast corner of a twenty-acre entry, No. 793, in the name of Wm. Owen in Blount's line, and also for corners of Geo. Courtrer's occupant entry," the objects called for being well known at date of entry and easily ascertained at present. (*Post, p. 399.*)

4. EVIDENCE. *Record.*

   Where a Court partition of land constitutes a link in title, it cannot be proved by production of a copy of the final decree alone.

Smith *v.* Hutchison.

but must be proved by production of a copy of all essential parts of the record. (*Post, p. 399.*)

---

FROM LAKE.

---

Appeal from Chancery Court of Lake County. W. H. SWIGGART, Ch.

MOORE & WELLS for Smith.

C. N. LANNOM and J. T. BARNETT for Hutchison.

WILKES, J. This is a bill to enjoin the cutting of timber upon a certain tract of land in Lake County, and for an account for timber already cut, and to quiet title of complainants to the land. The contest turned upon the title to the land, and the Chancellor found this question in favor of the complainants.

Under an order of reference the value of the timber cut was fixed, and as to this feature of the case there is no further controversy, it being conceded that the value found is correct. Defendants, however, insist that they have the superior title to the land from which the timber has been cut, and this question of title is now the only one in dispute.

The Chancellor was of opinion that not only did the complainants have the superior title to the

land, but also that the title papers of defendants did not cover the land in dispute.

Complainants' title is based upon an entry made in 1846, in which the range and section in which the land is situated are specified. It appears that no grant issued upon this entry until 1885, when it did issue to Caldwell, Cochran and Wilson, assignees of Owen, the original enterer. Complainant derives his title from these grantees, through a Court partition proceeding, which it is conceded was altogether regular and valid. It does not appear that there is any serious contention but that the title papers of complainant cover the land in dispute.

Defendants' title is based upon two entries, one dated June 4, 1842, the other in 1851, and both calling for the same 600 acres. These entries were surveyed in March, 1855, and on July 1st of that year the lands were granted. This grant calls for an east and west line of 436 poles, and nine links to a stake, in the edge of Reelfoot Lake.

Defendant insists that this line is in fact 800 poles instead of 436. The grant is called the W. R. Harris grant No. 5881. The entry upon which it is based does not call for the lake, but merely for distance of 436 poles. The heirs of Harris conveyed the southern half of this grant to J. W. and D. B. Jackson, and the boundaries purport to contain 900 acres. The Jacksons con-

veyed to Hutchison. Both these conveyances call
to run east to the lake. The Harris heirs con-
veyed the north half 'of this granted land to
Hornbeak, and that conveyance calls also to run
to the lake, and to contain 617 acres. In 1842
W. H. Caldwell made an entry calling for 800
acres. This was sold to Harris in 1848. ·Some
contention is made that the land in controversy is
covered by this latter grant, but this is not the
case as presented by the pleadings, which. allege
that it is covered by the 600 acre grant. It does
appear, however, that this 800 acre tract, although
it also calls for the lake, does not reach the
point which defendants claim by something near
¾ of a mile. The whole strength of defendants'
contention is that their survey, grant, and subse-
quent title papers call for a stake in the edge of
the lake, and this is construed to mean the chan-
nel of the lake, to reach which it is necessary to
go some 900 poles, instead of 436, as the entry
and grant call for. It appears from the evi-
dence in the case that the boundaries or edges of
the lake are shifting, and there are around its
margin "shallows" or "scatters" consisting of chan-
nels, sloughs, and bayous, which are usually re-
ferred to as the lake, and during the course of
the number of years covered by these title papers,
some of ˙ these have filled up ˙ as the result of
overflows, and the margin of the lake has changed·

It clearly appears that when the survey of this

land was made, it would have been necessary to go some distance into the water by wading or boating in order to reach the limit claimed by defendants, but to stop at the distance called for in the grant and survey of 436 poles, defendants would not only obtain their 600 acres, but would not conflict with complainants' boundaries. As before stated, it appears that defendants' title was based upon two entries, one made in 1842 and one in 1857, and each purporting to embrace the same 600 acres. Between the dates of the original entry, and before the survey was made, to wit, in 1846, complainants' entry was made covering the land in dispute, and this entitled them to a grant to relate back to the date of the entry, nothing else being in the way.

If, now, the defendants, commencing at their beginning corner, should survey a tract of land by the distance calls in their grant, it would contain 600 acres, the amount called for in it, and still there would be no conflict. We think that the preponderance of the evidence sustains this view, and while natural objects will usually control corners and distances, still such objects must be fixed, stationary and well defined, and not subject to such changes as is shown by the proof in this case as to the margin of the lake.

It has been held that a senior enterer cannot extend his entry by survey beyond the calls and amount of his entry as against a junior claimant.

*Fly* v. *Lessee. of E. Tenn. College,* 2 Sneed, 689; *Nolen* v. *Wilson,* 5 Sneed, 339; *Bleidorn* v. *Pilot Mt.,* 5 Pickle, 199.

We do not find any s̲atisfactory evidence of possession and actual inclosure and occupancy by either party of the land in dispute.

It is said it was error to tax in the bill of cost the cost of the transcript in the case of *Caldwell* v. *Wilson,* which was a link in complainants chain of title. It is said the final decree was all that was necessary. We think this contention not well made. If the decree alone had been offered as evidence, it could, and no doubt would, have been objected to because not accompanied by the record on which it was based.

We are of opinion complainants' entry must be treated as special, since it calls to commence at a natural object, a beech tree, the southeast corner of a twenty-acre entry No. 793, in the name of Wm. Owen, in Blount's line, and also for corners of Geo. Courtrer's occupant entry, all of which were then well known, and the boundaries now readily identified from the description.

We are satisfied from an examination of the record and comparison of the calls of the entries and grants filed, and from an inspection of the plats in the transcript, as well as the evidence of the witnesses, that there is no error in the holding of the Chancellor that the land in controversy is covered by complainants' title papers, but

is not by defendants', and that if there was an actual conflict, and the land was covered by the title papers of each, the title of complainants must nevertheless be considered the superior in law, and the decree of the Court below is therefore affirmed with costs.