(86 South. 307)

No. 22463.

### MEYER v. COMEGYS.

(June 3), 1920. Rehearing Denied Oct. 14, 1920.)

*(Syllabus by Editorial Staff.)*

1. **Boundaries &#9758;47(1)—Claimant of disputed area not estopped by having treated road as boundary.**

Plaintiff who stated in answer to a proposition that a disputed area that if the land was wanted it, is not debarred from claiming the area on any theory that, having treated a road as the boundary, and not having claimed the area, he is estopped to do so.

2. **Adverse possession &#9758;68—Prescription applicable to acts translative of property not supported, where title papers did not cover area.**

If defendant claimant of a disputed strip did not acquire the strip under his title papers, there is nothing to support in his favor prescription of 10 years applicable to acts translative of property.

3. **Boundaries &#9758;3(1)—Guides for determining boundary or location stated in order; intention being controlling.**

The legal guides for determining a question of boundary or the location of a land line in their order and importance are natural monuments, artificial monuments, distances, courses, and quantity; the controlling consideration being the intention of the parties.

4. **Judgment &#9758;712—Not binding on parish not before court.**

In a petitory action, wherein a road is claimed as a boundary, any conclusion reached on the question of whether or not the road was ever dedicated to public use cannot bind the parish, which is not before the court.

5. **Boundaries &#9758;3(4)—Road described as boundary of land sold controls quantity stated.**

Where land is sold and described as running on or bordering a public road, the road as it really exists on the ground controls as an artificial monument, and any statement of the quantity of land in the deeds must yield.

6. **Boundaries &#9758;3(8)—Plat stating acreage held to govern in determining boundary.**

Where land sold was described in the deeds according to a plat by lot numbers whose acreage was clearly given to the fraction of an acre, both on the plat and in the deeds, and apparently paid for at so much an acre, the plat, and not a road actually laid out on the ground, should govern, in accordance with the intention of the parties in determining the boundaries of the land.

7. **Boundaries &#9758;3(9)—Acreage or quantity stated in deed prevails where no courses or distances given.**

Where no courses or distances are stated in the deed, the acreage or quantity of the land conveyed, which is stated, prevails.

Appeal from First Judicial District Court, Parish of Caddo; T. F. Bell, Judge.

Action by Abe Meyer against J. M. Comegys. From judgment for plaintiff, defendant appeals. Affirmed.

N. C. Blanchard and Blanchard, Goldstein & Walker, all of Shreveport, for appellant.

Joseph H. Levy, of Shreveport, for appellee.

DAWKINS, J. Plaintiff brings this petitory action alleging the ownership of all of lots 7, 8, and 9 of the J. B. Lewis lands, as per map or plat in Conveyance Book V, pages 609 and 610, of the Records of Caddo Parish, and alleging that defendant is in possession of portions of said lots, described as follows: Beginning 119.2 feet south of northeast corner of section 18, township 17 north, range 14 west, running thence south 558.8 feet; thence south 52 degrees, west 1,042.8 feet; thence west 830.3 feet; thence north 54 degrees, east 2,042 feet, to the place of beginning, and containing 16.71 acres of land, more or less—and prays to be decreed the owner of the said 16.71 acres so described.

Defendant pleads, first, the exception of no cause of action, and for answer avers that he is the owner of lots 5 and 6 of the said J. B. Lewis lands, according to the same plat, and that the said 16.71 acres is a part of these two lots, owned and possessed by defendant. He further pleads equitable estoppel, the prescription of 10 years acquirendi causa, and prays that the demands of plaintiff be rejected.

There was judgment below in favor of plaintiff, decreeing him the owner of the property in dispute, ordering defendant to deliver possession thereof, and reserving plaintiff's right to sue for the occupancy of the premises.

Defendant has appealed.

### Statement of Case.

In 1875, J. B. Lewis, then a resident of Caddo parish, was the owner of some 1,532.-14 acres of land, situated in said parish a few miles west of the city of Shreveport, and consisting of parts of sections 17, 18, 19, and 20 of township 17 north, range 14 west. Desiring to sell said property to the best advantage, he had a map, or plat, made by a surveyor, one Wm. R. Devoe, and on which the land was divided into lots numbered from 1 to 44, inclusive. On the margin of said plat, the number and acreage (the numbers corresponding to those written upon each lot on the plat) of each and every lot was given under the headings (in columns) "Lot" and "Acreage," none of which contained as much as 100 acres, but most of which consisted of 40 and 20 acre lots, there being only three containing more than 40 acres and seven less than 20 acres, the remainder, other than the 20 and 40 acre tracts, ranging between those figures. There were two tracts bearing the number 33, one containing 25 and the other 40 acres, and another numbered 9½, and making an actual total of 46 lots. The plat gave no measurements to the lines of the several lots, but a general plan of north and south and east and west courses, parallel to the governmental section lines, was followed, except as to those portions bordering upon the line of the Texas & Pacific Railroad, and upon a dirt road which ran through the property toward the Texas line, in which cases the lots were made to stop at those roads, as shown on the plat, none crossing or going beyond in either direction, and producing irregular lots of varying sizes according to appearance and the corresponding acreage shown on the margin.

Lewis then proceeded to sell off the property at different times, and on September 10, 1887, the plaintiff purchased from said Lewis lots 7 to 13, inclusive, 25, 26, and 27, and

29 to 44, inclusive (less lot 9½), described as containing 908.27 acres, more or less, and for which plaintiff paid, according to his deed, $2,724.80.

On February 18, 1901, Lewis sold to one J. Riley lots 6, 9½, 18, 19, 20, and 21 "as per map of the J. B. Lewis lands recorded in Conveyance Book V, pages 609 and 610, of the clerk's office of said parish, 195⁸/₁₀₀ acres, more or less," for the price of $975.40; and on July 24, 1902, the same vendor sold to the same vendee "lot No. five (5) of section seven (7), township seventeen north, range fourteen (14) west, as per map of J. B. Lewis lands on record in Book V, pages 609 and 610, records of Caddo parish, Louisiana, said lot 5 containing thirty-five and ³⁸/₁₀₀ acres (35.38) A."

The plat shows the line of the Texas & Pacific Railroad as correctly located, but the dirt road, variously referred to as "Road to Shreveport," "Texas Road," "Shreveport and Greenwood Road," etc., was placed upon the plat by Devoe (beginning at a point about where the south end or apex of the triangular lot 9½ joins the west line of lot 10) some distance north and west of where said road was and is actually located upon the ground, so that it, the said dirt road, then and now runs in a northeasterly course, approximately parallel to and at a distance of about 600 feet south and east of where the line drawn upon the map as the boundary between lots 7, 8, and 9, belonging to plaintiff, and lots 5 and 6, belonging to defendant, would fall. Hence it is this strip of land, amounting to some 16 acres, between the line drawn upon the plat and the dirt road as actually laid out, which is now in contest.

There never was a road along the line indicated on the map, but for more than half a century the dirt road has been traveled and in use over the route approximately where it now runs, and, in recent years has been paved or graveled by the parish of Caddo. If the line shown upon the map is found to be the boundary, the parties will receive almost to the acre the areas called for by their respective deeds; whereas, if the road as it exists is held to govern, plaintiff will lose and defendant will gain just the quantity of land in dispute according to the calls of their respective titles.

The question presented for our determination, therefore, is: Which shall control, the line as shown upon the plat, or the location of the road upon the ground?

The equitable considerations in favor of the respective sides are that, if plaintiff prevails, defendant will be deprived of a frontage upon the road for both of his lots, but will receive all of the acreage called for by the deeds of Riley, his ancestor in title, to lots 5 and 6; if defendant wins, plaintiff will lose some 16 acres out of the 908.27 which he purchased and paid for from Lewis. The road on the ground is not mentioned in any of the deeds of either party, but each purchased by lot number and with special reference to the plat in Book V, pages 609, 610. (There having been an erroneous reference in plaintiff's original deed to another map or plat, a year or so before the filing of this suit, Lewis executed to him a correction by which the proper plat was mentioned, to wit, the one in Book V just mentioned.)

[1, 2] From 1887, when plaintiff purchased from Lewis, and since 1901 and 1902, when Riley, defendant's author in title, likewise acquired from Lewis, it was generally supposed that the road as it ran upon the ground was the dividing line between the parties. Plaintiff had paid very little attention to his holdings, and defendant's vendors had cleared and placed improvements upon the property now in question, all assuming, as indicated, that the road was the boundary. However, a year or two prior to the filing of this suit, a survey of lots 5 and 6 was made,

and it was found that they contained about a third more area than the deeds called for, treating the road as the line. The owner at that time, through an intermediary, approached plaintiff with the view of obtaining a conveyance of whatever interest he had in this additional acreage, and this appears to have been the first information or knowledge that he (Meyer) had that he had any claim to the property north and west of the road. Plaintiff declined to entertain any proposition to sell, and frankly stated that if the land was his, he wanted it. In these circumstances, we can see no basis for the plea of estoppel based upon the contention that, having treated the road as the boundary, plaintiff should be debarred from claiming the property in dispute. Russell v. Producers' Oil Co., 138 La. 184, 70 South. 92. Nor do we think that the plea of prescription is well founded, for the question in the case is as to whether the deeds of the one or the other party cover the property in dispute, and if it is found that defendant did not acquire it under his title papers, then there would be nothing to support the · prescription of 10 years applicable to acts translative of property. Defendant does not claim, nor does the proof show, possession long enough to vest title by the prescription of thirty years.

[3-7] As pointed out by the court below in its opinion, the legal guides for determining a question of boundary, or the location of a land line, in the order of their importance and value, are: (1) Natural monuments; (2) artificial monuments; (3) distances; (4) courses; and (5) quantity. But the controlling consideration is the intention of the party ·or parties. There are no natural monuments, such as streams, trees, etc., to guide us in this case, but defendant relies upon the artificial monument, the road, contending naturally that it must be considered as the boundary, and that the calls for area or acreage must yield to the location of the road as it actually exists. The surveyor who made the plat was dead at the time of the trial below, and it was impossible, therefore, to show whether he made an actual survey and location of the road, or merely approximated it upon the plat, by what is termed an "office survey." We do not think that the question of whether or not the road was ever dedicated to public use is of any importance to the case, and certainly any conclusion reached on that point could not bind the parish of Caddo, which is not before the court. If the property (both that of plaintiff and defendant, or either of them) had been sold and described as fronting upon or bordering the public road by the descriptions in the deeds, the view that the road as it really exists should control as an artificial monument would undoubtedly be correct, and the quantity would have to yield; but in each instance the land was described according to the plat; by lot numbers, whose acreage was clearly given to the fraction of an acre, both on the plat and in the deeds, and apparently paid for at so much per acre. It would seem reasonably clear, then, that the plat, and not the road, was to govern, for the parties believed they were acquiring, and did actually acquire, their full acreage with the boundary line as it appears upon the plat. As has been aptly suggested by the lower judge, if the road had been really 30 chains, instead of 10, south and east of the line shown upon the map, it would have left very little area to lots 7, 8, and 9, while that of defendant would have been increased several times in quantity; yet, in such circumstances, it could hardly have been said, with seriousness, that the road on the ground should control. If the contention of defendant is to prevail in the one case and not in the other, by what rule shall the court say when the first consideration will cease and the other begin to apply? Must it be when the mistake amounts to 15, 20, or 25 chains, or more or less? Monuments of the,

character mentioned are allowed to control, for the reason that in cases where the line is uncertain, but approximately in a given location, these guides are more permanent and possess less of the possibilties of. error incident to courses, distances, and area; but when the basis for the rule ceases, as where, admittedly, the monument does not meet the calls of the deeds, then it cannot control, and must give way to the weaker guides. There being no courses or distances given in this case, the acreage or quantity prevails, and both parties receive thereby all that their deeds call for. State v. Buck, 46 La. Ann. 671, 15 South. 531; Land Co. v. Burns, 193 U. S. 167, 24 Sup. Ct. 425, 48 L. Ed. 662; Live Stock Co. v. Springer, 185 U. S. 47, 22 Sup. Ct. 563, 46 L. Ed. 800; Horne v. Smith, 159 U. S. 40, 15 Sup. Ct. 988, 40 L. Ed. 68; Hostetter v. Los Angeles Terminal Co., 108 Cal. 38, 41 Pac. 330; Hanson v. Township of Red Rock, 4 S. D. 358, 57 N. W. 11; Sanborn v. Gunter, 84 Tex. 273, 17 S. W. 121, 20 S. W. 72; Christenson v. Simmons, 47 Or. 184, 82 Pac. 805; Smith v. Hutchison, 104 Tenn. 394, 58 S. W. 226. See, also, note to Matheny v. Allen, 63 W. Va. 443, 60 S. E. 407, 129 Am. St. Rep. 984.

· We agree with the trial court, wherein he says:

"We do not think this case presents a stale claim; neither does it present a case of equity on the part of defendant, for he bought with his eyes open, knowing exactly what might be the result."

When defendant purchased, he knew that controversy had arisen over the matter now in question, and only did so after failing to reach an understanding about it with plaintiff. He actually paid some $3,000 less for the property than others would have given, but for the litigation which was foreseen.

For the reasons assigned, the judgment appealed from is affirmed, at the cost of the appellant.