**JEFFERSON AND PLAQUEMINES DRAINAGE DISTRICT et al.,**
**Plaintiffs,**

v.

**UNITED STATES of America,**
**Defendant.**

**Civ. A. No. 5962.**

United States District Court
E. D. Louisiana,
New Orleans Division.

Jan. 24, 1958.

Deutsch, Kerrigan & Stiles, Ralph L. Kaskell, Jr., New Orleans, La., for plaintiffs.

Norton L. Wisdom, New Orleans, La., for defendant.

J. SKELLY WRIGHT, District Judge.

Public Law 392,[1] 84th Congress, Act Jan. 25, 1956, 70 Stat. 4, gives these

---

1. Public Law 392 reads:

"*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That jurisdiction is hereby conferred on the United States District Court for the Eastern District of Louisiana, New Orleans Division, to hear, determine, and render judgment fixing the boundary between the east right-of-way line for Harvey Canal (a segment of the Intracoastal Canal in Louisiana), south of the eighty-arpent line, and the abutting properties and the easement, servitude and right of use for levee purposes adjacent to said right-of-way line, claimed by the Jefferson and Plaquemines Drainage District, and which said right-of-way was conveyed to the United

States by act of sale from Harvey Canal Land and Improvement Company on March 10, 1924, and registered in the records of the parish of Jefferson, State of Louisiana, on March 10, 1924, in conveyance book 61, folio 443. In the determination of such matter all defenses of the United States based upon laches, lapses of time, statutes of limitation, prescriptive periods, and estoppel arising out of the issuance of permits for any activities or constructions along said Harvey Canal, are hereby waived.

"Sec. 2. Such suit may be instituted at any time within one year after the enactment of this Act by Jefferson and Plaquemines Drainage District or any of said abutting property owners, and any of said other parties may join or in-

plaintiffs the right to have the "boundary between the east right-of-way line for Harvey Canal (a segment of the Intracoastal Canal in Louisiana), south of the eighty-arpent line, and the abutting properties and the easement, servitude and right of use for levee purposes adjacent to said right-of-way line, claimed by the Jefferson and Plaquemines Drainage District," judicially determined by this Court. In these proceedings the Drainage District and owners of property abutting on the Harvey Canal right-of-way have exercised their right under Public Law 392.

The Government acquired the right-of-way for Harvey Canal in 1924. In the act of sale, the boundaries of the right-of-way are described and shown "on the attached sketch of survey made by James S. Webb, C. E., dated November 27, 1923, which said sketch of survey is made part of this act." The sketch shows the 300-foot right-of-way to extend from the Mississippi River at New Orleans, in a southerly direction for approximately five miles, to Bayou Barataria. In suit here is only the east boundary of the right-of-way from the 80-arpent line to Bayou Barataria, a distance of approximately 2.5 miles. This part of the boundary is marked on the Webb survey only by a railroad iron [2] on the 80-arpent line and a line, or bearing, marked S 16° 50′ E and leading from the railroad iron south to Bayou Barataria. And there is no physical monument of any kind in place anywhere along this boundary line.

While the difference between the parties here areawise is quite small, being a triangular strip starting at the railroad iron on the 80-arpent line and extending south approximately two and one-half miles along the right-of-way to Bayou Barataria where it reaches its maximum width of 45′, in addition to responsibility for the maintenance of levees, this dispute involves valuable industrial property. The property owners' position is very simple. They say that the bearing shown on the Webb survey of S 16° 50′ E, beginning at a point on the 80-arpent line, marked by the railroad iron, and extending to Bayou Barataria is a true bearing, that is, it is referenced to true north. The Government says that the bearing is not a true bearing, that it is a bearing based on old property lines in the area, that it must be related to other bearings shown on the survey about which there exists no doubt. If the bearing, S 16° 50′ E, is a true bearing, the two and one-half mile triangular strip of land in suit is not part of the right-of-way acquired by the United States in 1924 but is the property of these plaintiffs.

■■ It is elementary that where a boundary shown in a survey is marked by physical monuments on the land, those monuments control over directions in the survey by bearing and distances. Brown v. Huger, 21 How. 305, 306, 62 U.S. 305, 306, 16 L.Ed. 125. It is also elementary that an old survey can be easily followed if the monuments marking the lines or boundaries can be located. Where only one line of such survey can be found marked by physical monuments in place on the ground, its length and bearing can be measured and compared with the length and bearing of that line shown on the original survey record. If the length and bearing are found to differ from the original, this difference will show the correction to be applied to all of the original courses or

tervene in such action. Nothing in this Act shall be construed as an inference of liability on the part of the United States.

"Sec. 3. No monetary benefits or claims against the United States shall accrue as a result of the determination of the said boundary under this Act."

2. The railroad iron is no longer in place. However, all parties are agreed that its location, as shown in the Webb 1923 survey, is on the 80-arpent line, 331 feet west of the ancient grate bar which is presently in place. Therefore, the point where the railroad iron was is not in controversy.

bearings.[3] Thus, irrespective of the type of bearings used in the original survey, those bearings can be corrected or converted to true north.

Very few, if any, of the earlier surveys of rural areas in this part of Louisiana were based on true north. Consequently, in reading such surveys, unless the type of bearing used is indicated, all bearings shown thereon should be corrected to true north. It becomes most important, therefore, to find at least one line in the survey fully monumented for use as a correction reference.

The boundary line in dispute here apparently was not fully monumented by Webb at the time the 1923 survey was made. It is agreed that the line starts from a point on the 80-arpent line formerly marked by the railroad iron, but no monument at the Bayou Barataria end of the line has been found. Since monuments in place on the land are unavailable, in determining the true location of the boundary, resort must be had to the bearings and distances shown in the survey for the line in question.[4] With reference to the bearings, plaintiffs assume from the fact that the survey shows an arrow pointing to north that all bearings shown on the survey are referenced to true north. They would simply have the court appoint a surveyor who would proceed to the point formerly marked by the railroad iron on the 80-arpent line and monument a line to the Bayou bearing S 16° 50′ E true.

Unquestionably that would be the proper procedure if it were clear that the bearing, S 16° 50′ E, as shown on the 1923 Webb survey, was referenced to true north. Not only is that not clear, but by referring to the bearing shown on the line running from the same railroad iron north to the highway, which line is monumented at either end, it is established beyond question that S 16° 50′ E is not referenced to true north. The Webb 1923 survey shows a bearing of S 17° E for the fully monumented line running north from the railroad iron. It is agreed between the parties that the true bearing of that line is S 17° 14′ E. Obviously, therefore, the bearings shown on the Webb survey in 1923 are not true bearings, that in order to convert the bearings, as shown on the survey, to true bearings, a correction of 14 minutes must be applied. Applying this correction of 14 minutes to the S 16° 50′ E bearing shown on the survey running south from the 80-arpent line, the result is a bearing of S 17° 04′ E true.

This application of elementary survey principles is confirmed by the fact, as shown in the insert on the Webb 1923 survey, that a 10-minute angle or turn to the right, from S 17° E to S 16° 50′ E, was intended in the right-of-way boundary at the 80-arpent line. Plaintiffs and their experts would disregard this call for a 10-minute angle, use an angle of 24 minutes, and switch at that point from the type of bearing used on the monumented line above the 80-arpent line to a bearing referenced to true north below the 80-arpent line. On cross-examination, even the plaintiffs' experts had to admit that no surveyor would use one type of bearing for one line in a survey and use a different type of bearing for the very next line.

This Court's finding as to the proper bearing of the line in suit is also confirmed by the fact that Webb, the man

3. Breed and Hosmer, Elementary Surveying, at p. 136, reads:
"To follow the old survey is a relatively easy matter when its physical boundaries can be identified. If only one line of a survey can be found marked by physical boundaries, its length and direction can then be measured and compared with the original survey record. They doubtless will be found to differ from the original, and this difference in source will show the correction to apply to all of the original courses, and similarly the difference in distance will give a correction percentage to apply to all of the original dimensions. Then with these new values for the courses and distances the old survey can be retraced."

4. Meyer v. Comegys, 147 La. 851, 86 So. 307.

who made the 1923 survey at the request of the property owners, was in 1945 requested by the Government to retrace his survey. Another surveyor, Hotard, did the field work for Webb in the 1945 survey. This 1945 survey by Webb shows that the bearing of the boundary below the 80-arpent line shown on the 1923 survey as S 16° 50' E is not referenced to true north, that the true bearing of that boundary is S 17° 04' E. It is also elementary in surveying that the person best fitted to retrace an old survey is the person who made the old survey.[5]

In 1956 two pipes were uncovered on the east right-of-way boundary between the highway and the Mississippi River, which part of the boundary is shown on the Webb survey of 1923 also as bearing S 16° 50' E. These two pipes were shown to be the original monuments placed by Webb in 1923 on that line. A survey in 1956 by R. P. Rordam[6] proved that the line between these two pipes had a true bearing of S 17° 04' 47" E, which, allowing for slight movement in the markers through the years, confirms that the bearing S 16° 50' E, as shown on the 1923 survey, is identical with S 17° 04' E true.

Surveys by Webb in 1923 and 1945, the Rordam survey, the Seghers[7] survey, as well as an application of elementary principles of surveying, all demonstrate that the bearings shown in the Webb 1923 survey were not referenced to true north and that the boundary line here in dispute, though shown on the Webb 1923 survey as S 16° 50' E, when referenced to true north, is S 17° 04' E.

It is, therefore, the order of this Court that Alvin E. Hotard, C. E., be, and he is hereby, appointed surveyor to erect suitable permanent monuments on a line beginning at a point on the 80-arpent line 331 feet west of the ancient grate bar and running S 17° 04' E true to Bayou Barataria, that a survey showing this work be prepared by the surveyor and submitted to this Court for use in the decree fixing the boundary in dispute.

---

5. Clark, Surveying and Boundaries, at p. 726, reads:

"* * * in any case of disputed boundary, the testimony of even the acts of the surveyor who originally established it and who pointed out the stakes set by himself to mark the lines so many years ago accompanied by continued use and occupation in the recognition of such line, is not only proper but strong evidence that such was the true line, and better evidence than a new survey made more than forty years afterwards which changes such line. The original survey must govern if it can be retraced. It must not be disregarded."

6. See Findings of Fact this day rendered Nos. 57, 58, 59, 60, 61 and 66.

7. See Findings of Fact this day rendered Nos. 65, 66, 67, 68 and 69.