ELLIS, Judge.
The following chronology of facts is undisputed though the conclusions to be drawn from them are at issue.
On September 26,1958, Charlie P. Wilson granted John W. Warner a $6000.00 mortgage covering sixty acres of land.
On June 26, 1962, Charlie P. Wilson granted Bogalusa Sales Corporation a $9521.28 second mortgage on one acre out of the sixty acres described in the Warner mortgage. The Bogalusa mortgage was later assigned to Allied Mortgage and Development Company, Inc., plaintiff herein.
In mid-1963, Wilson defaulted on the first mortgage and Warner, the mortgagee, delivered the note' to Mr. France W. Watts, Jr., an attorney, for collection. Upon receipt of a demand from Mr. Watts for payment, Wilson negotiated a loan with Magee Finance Company and on July 8, 1963 granted Magee a $16,000.00 collateral mortgage on the sixty acres described in the Warner mortgage. This mortgage as second on fifty-nine of the acres and third on the acre securing the Bogalusa mortgage. All three mortgages were properly recorded upon execution and none have yet been canceled.
On July 12, 1963, Magee Finance paid to Mr. Watts the sum of $9059.27, noting on their check that the money represented a “payoff for Charlie P. Wilson loan”. On that date also, Magee Finance issued a check direct to Charlie P. Wilson for $710.73. In recognition of the two amounts thus expended by Magee Finance, Wilson, on July 12, 1963, signed a direct obligation or hand note in the amount of $16,611.00. The hand note recites that it is secured with the pledge of the $16,000.00 collateral note dated July 8 and by the pledge of the $6,000.00 note dated September 26, 1958.
This suit was filed October 26, 1964 by the owner of the Bogalusa mortgage for the purpose of canceling the mortgage of September 26, 1958. Plaintiff contends *637 that the mortgage has been extinguished by the payment from Magee Finance and alternatively that it was extinguished by confusion.
Relying on the case of White System of Alexandria v. Fitzhugh, La.App., 5 So.2d 555, the trial judge granted judgment of dismissal in these proceedings, finding that “Magee Finance became subrogated to the rights of the Warners.” Plaintiffs have appealed.
The Fitzhugh case concerned three chattel mortgages on each of two Chevrolet trucks. The first mortgage was paid by the holder of the third mortgage. Subsequently, the second mortgage holder foreclosed and the third intervened claiming the benefits of Article 2161 of the Louisiana Civil Code. That article provides in part that:
“Subrogation takes place of right:
(1)For the benefit of him who, being himself a creditor, pays another creditor, whose claim is preferable to his by reason of his privileges or mortgages.”
In that case the Second Circuit held that subrogation had taken place in favor of the third mortgage holder as to the rights of the first mortgage holder.
The requirements for subrogation under Article 2161 are gleaned from the language of the Fitzhugh case as follows:
(1) The third mortgagee must be a creditor of mortgagor.
(2) The first mortgage must not be erased from the public records.
(3) Payment must be made direct to the first mortgage holder by the third mortgage holder.
(4) The security for the first mortgage must be delivered to the third mortgagee and not to the mortgagor.
Avant v. Hodge, 6 La.App. 290, was a successful suit by the purchaser of immovable property to have a mortgage canceled. A $300.00 mortgage note had been executed by Poston and was held by the bank. Dr. Hodge, who endorsed the note as surety, was forced to pay it in part and took a new note from Poston for that amount plus the amount of an open account which Poston owed him. The Court found that:
“ * * * Dr. Hodge loaned Poston the money to make the final payment on this mortgage note and * * * when it was paid the bank delivered the note to Poston, who later turned it over to Hodge to be held by him as collateral * * *»
The note, therefore, was extinguished because :
“ * * * it is clear that the mortgage note when paid at the bank went 'into the hands of Poston, the obligor. When it was paid by Poston and delivered to him it became a dead piece of paper. The obligation evidenced thereby had been paid in full and was extinguished.”
Thus, in Avant, not all of the requirements spelled out in Fitzhugh were present. Payment was not made direct to the first mortgagee and the security for the first mortgage obligation was not delivered to the third party, but to the mortgagor himself. On this point the Court, rejecting defendant’s arguments under Article 2161 said:
“Counsel’s position might be well taken if Hodge had in fact paid the bank and had taken up the note; but, as already stated, Hodge did not pay the bank but merely loaned Poston the money with which to make the payment, and instead of his taking up the note the note went back into the hands of Poston, the maker and obligor. “Where the maker of a note borrows money from a third person with which he pays the note, it will operate as a payment unless there is a clear intent that it should operate at a purchase and not as a payment. 8 Corpus Juris 590”
*638 We believe that the facts in the instant case clearly demonstrate a failure to meet the requirements of the Fitzhugh case and that the judgment of the lower court should be reversed.
 Magee Finance cannot claim the benefits of Article 2161 because at the time of the payment of the $9,059.27 to Mr. Watts, an attorney for Mr. Warner, Magee Finance was not the creditor of Mr. Wilson. The execution of the $16,000.00 collateral mortgage four days before did not serve to create the debtor-creditor relationship. No sums were advanced by Magee Finance at that time. It is elementary that a collateral mortgage does not create or represent a debt itself, but rather is a useful and common device for the securing of direct obligations, normally represented by a hand note.
The evidence before us convinces us that, aside from a consideration of sub-rogation under Article 2161 of the Civil Code, Magee Finance cannot claim to be the purchaser and owner of the Warner note. The evidentiary facts bearing on this issue all indicate that there was no attempt or desire to purchase the Warner note, but to pay it and thus extinguish the debt for which it had been given. The check issued by Magee Finance to Mr. Watts for the note was, on its face, to “payoff” and not to purchase the Warner note and mort:gage. Second, the hand note for $16,611.00 included the amount paid for the Warner note. If Magee had purchased that note it would have been the owner thereof and there would have been no need to include that amount in the new hand note, or to use it as collateral security for a new hand note. The Warner note and mortgage were not collateral, but direct obligations. To have in existence at the same time two equally enforceable notes representing the same consideration is hardly an equitable result and the second would operate as a novation of the first. Third, no attempt was made to transfer the note by endorsement or by authentic act, though the record does not disclose whether the Warner note was payable to Warner or to the Bearer.
The fourth fact which argues against the finding of an actual purchase is that the $6,000.00 Warner note was allegedly pledged along with the $16,000.00 collateral note as security for the payment of the $16,611.00 hand note. Wilson could not have pledged the $6,000.00 note to Magee if Magee were the owner of it.
The latter fact also precludes the application of Article 2161. Wilson, in order to be able to pledge the note to Magee Finance, must have received it, at least constructively, from Warner or his attorney. In that event the instant facts would be clearly analogous to those in the Avant case.
We find that Magee Finance did not purchase the Warner note and that Magee Finance is not subrogated to the rights of Warner under the first mortgage under the law as set forth in Civil Code Article 2161. For these reasons, the mortgage from Charlie P. Wilson to John W. Warner, dated September 26, 1958, recorded in MOB 148 Page 287, should be canceled and the judgment of the lower court is reversed.
Reversed.