532 So.2d 397 (1988)
PELICAN HOMESTEAD AND SAVINGS ASSOCIATION Plaintiff-Appellant,
v.
SECURITY FIRST NATIONAL BANK, et al., Defendants-Appellees.
No. 87-667.
Court of Appeal of Louisiana, Third Circuit.
October 5, 1988.
Writ Denied December 2, 1988.
Baldwin & Haspel, Malcolm A. Meyer, New Orleans, Neblett, Beard & Arsenault, Robert Neblett, Alexandria, for plaintiff-appellant.
*398 Gist, Methvin, Hughes & Munsterman, John Munsterman, Alexandria, for defendants-appellees.
Before DOMENGEAUX, KNOLL and KING, JJ.
KNOLL, Judge.
Pelican Homestead and Savings Association (hereafter Pelican) appeals a declaratory judgment in favor of Security First National Bank (hereafter Security). The trial court ruled that Security's collateral mortgage on certain immovable property in Rapides Parish had a superior rank to Pelican's two vendors' liens and mortgages on the same property. Pelican assigns as error that the trial court: (1) erred in giving Security's collateral mortgage a superior ranking because that instrument was incomplete, and held in deposit for future completion and pledge; (2) erroneously applied the law of registry when no "third party" was involved; (3) failed to consider the intent of the two banking institutions; (4) failed to recognize Pelican's rights of legal subrogation for having paid a superior creditor; and (5) erred in giving premature ranking to Security's collateral mortgage by not recognizing that an incomplete hand note and pledge instrument are suspensive obligations until completed. We affirm.

FACTS
In the learned trial court's written reasons for judgment, the facts of this case were clearly set forth which we incorporate herein, as follows:
"Claude E. Patrick was the owner of several improved lots, including Lots 4 and 20 of Windermere Way Subdivision in Alexandria. On March 9, 1984, Security First National Bank (Security) issued its irrevocable Letter of Credit to Ryder Truck Rental, Inc., for $100,000.00 for the account of Patrick's corporation, Altony Service, Inc. At that time, Patrick, individually and on behalf of Altony Service, Inc., signed a note in favor of Security for $100,000.00. The note was not dated [had no due date, and did not have an interest rate]. On April 3, 1984, Patrick executed a collateral note and mortgage for $150,000.00 in favor of Security. This mortgage was recorded the same date and encumbered three lots, including the two improved lots mentioned above. It was second to two prior mortgages, one of which was in favor of First Bank and the other in favor of Pelican Homestead and Savings Association (Pelican). The $150,000.00 mortgage was required by Security as additional security for the Letter of Credit. Also, on April 3, 1984, Patrick signed a pledge instrument whereby the collateral mortgage note was pledged to secure the Letter of Credit.
On May 18, 1984, Security paid the Letter of Credit and inserted the date of May 18, 1984, in the $100,000.00 hand note. [Security also then inserted a due date and an interest rate.]
On April 18, 1984, Patrick sold one of the improved lots. The purchaser obtained financing from Pelican in the amount of $60,000.00.
On the same date Pelican also refinanced the other lot. Patrick did not reveal to Pelican the existence of Security's mortgage which he had executed approximately two weeks earlier.
Through error or inadvertence, Pelican's attorney failed to see MOB 985, Folio 701, wherein the collateral mortgage [of Security] was recorded, and therefore closed the two Pelican loans without making any arrangements with Security concerning the collateral mortgage. Pelican then paid and had cancelled the two original mortgages encumbering Lots 4 and 20.
Sometime after Pelican discovered Security's mortgage it filed suit for a declaratory judgment asking that the Security mortgage be subordinated to its April 18th mortgages."

COLLATERAL MORTGAGE
Pelican contends that the ranking of Security's mortgage was not effective on April 3, 1984, because of the incompleteness of the hand note and pledge executed by Patrick, and further because the debt *399 which the collateral mortgage secured did not come into being until Security paid the letter of credit in May of 1984. We disagree.
Commenting on the collateral mortgage, the Supreme Court noted in First Guaranty Bank v. Alford, 366 So.2d 1299 (La. 1978) at page 1302:
"[A] collateral mortgage is not a `pure' mortgage; rather, it is the result of judicial recognition that one can pledge a note secured by a mortgage and use this pledge to secure yet another debt.
A collateral mortgage indirectly secures a debt via a pledge. A collateral mortgage consists of at least three documents, and takes several steps to complete. First, there is a promissory note, usually called a collateral mortgage note or a `ne varietur' note. The collateral mortgage note is secured by a mortgage, the so-called collateral mortgage. The mortgage provides the creditor with security in the enforcement of the collateral mortgage note.
* * * * * *
[I]n the collateral mortgage situation ... money is not directly advanced on the note that is paraphed for identification with the act of mortgage. Rather, the collateral mortgage note and the mortgage which secures it are pledged to secure a debt.
* * * * * *
A collateral mortgage note may be pledged to secure future obligations. In that event full payment of a given obligation will not extinguish the collateral mortgage note and accompanying mortgage. (And in such cases the collateral mortgage will have a ranking from the initial pledge. La.Civil Code, art. 3158.)"
Furthermore, Tallulah Production Credit Association v. Turner, 391 So.2d 885 (La.App. 2nd Cir.1980), writ denied, 396 So.2d 900 (La.1981), held that a pledge of a collateral mortgage note to secure future debts of the pledgor to the pledgee will be given retroactive ranking from the date of the pledge of the collateral mortgage note.
In Tallulah the court noted at page 888-889:
"Paraphrased, C.C. Art. 3158 effectively provides that whenever a pledge of a mortgage note is made to secure indebtedness of the pledgor to the pledgee which arise after the pledge is made, and the pledged instrument remains in the hands of the pledgee, and without the necessity of any added notification or other formality, the indebtednesses of the pledgor to the pledgee which arise after the pledge shall be secured by the pledged instrument to the same extent as if the indebtednesses had come into existence when the pledge was made. If the pledge was made in good faith, the pledge shall be as valid as against third persons as it is against the pledgor."
The sole requirement for the confection of a pledge of a collateral mortgage note is the delivery of the collateral mortgage note to the pledgee. American Bank & Trust Company v. Straughan, 248 So. 2d 73 (La.App. 1st Cir.1971), writ denied, 259 La. 746, 252 So.2d 450 (1971). What is needed is a meeting of the minds that the delivery of the collateral mortgage and the collateral mortgage note is intended as a pledge to secure a loan, either present or future. People's Bank and Trust Co. v. Campbell, 374 So.2d 741 (La.App. 3rd Cir. 1979), writ denied, 376 So.2d 1268 (La. 1979).
When Patrick executed the collateral mortgage on April 3, 1984, it contained the following language:
"This note is given and mortgage is granted for the purpose of being used as collateral security by Mortgagor for any indebtedness due the holder or holders of this note, direct or contingent. The note may be issued and pledged by Mortgagor as his interest and convenience may require to secure loans and advances made or to be made or to secure the debt of Mortgagor, or of another. Upon payment of such indebtedness, the note may be returned to Mortgagor without extinguishment of the mortgage which is granted to secure its payment, and it may again at any *400 time and as many times thereafter as the interest and convenience of Mortgagor may require, be reissued or repledged by Mortgagor as a valid and existing indebtedness in favor of the holder or holders of the note as collateral security for any debt of the maker or of another and this mortgage shall be and remain in full force and effect to secure the payment of the note described until the note has been cancelled on its face." (Emphasis added.)
After reviewing the facts of this case in light of the prevailing jurisprudence, we conclude that the trial court was correct in providing retroactive ranking from the date of the pledge of the collateral mortgage note. It is clear that at the time of the execution of the collateral mortgage, Patrick had an outstanding indebtedness to Security for $82,426.31 evidenced by a hand note dated February 8, 1984, which, in pertinent part, provided:
"This note in principal, interest and attorney fees ... shall be secured by the pledge of all securities and/or property listed and described on the reverse side hereof, and all additions thereto, and/or substitutions therefor ... of every nature whatsoever that ... may hereafter... be delivered to ... the bank."
As further evidence of this understanding the collateral substitution agreement Patrick executed on April 3, 1984, in connection with the collateral mortgage stated:
"The following securities and/or properties are hereby pledged as security for the payment of the aforesaid note and all other notes executed by the undersigned in favor of the Security National Bank in Alexandria, Louisiana ..."
Moreover, we agree with the trial court that when Security paid the letter of credit in May of 1984, Patrick's contingent liability to Security became absolute, and the collateral mortgage given to secure this future advance of money was properly given retroactive ranking to the date of its execution and recordation on April 3, 1984.

RANKING OF MORTGAGES
Pelican next contends that the ranking of its mortgages in competition with Security should be determined by the intent of the parties. It further argues that Security was not a third party who could benefit from the public records doctrine since it did not rely on the public records. We do not agree.
The priority of competing mortgages on immovable property is determined by the date and time of registry in the appropriate public records. LSA-C.C. Art. 3358. The sole requirement to give the mortgagee his rank is the recorder's inscription of the mortgage. Progressive Bank & Trust v. Dieco Specialty, Inc., 378 So.2d 139 (La. App. 1st Cir.1979).
LSA-R.S. 9:2721 provides in pertinent part:
"No ... mortgage ... relating to or affecting immovable property shall be binding on or affect third persons or third parties unless and until filed for registry in the office of the parish recorder of the parish where the land or immovable is situated; and neither secret claims or equities nor other matters outside the public records shall be binding on or affect such third parties."
LSA-R.S. 9:2722 defines "third parties" as any third person or third party dealing with any immovable property who acquires any real or personal right, privilege or permit relating to or affecting immovable property. Moreover, LSA-R.S. 9:2754 provides that no notarial act affecting immovable property shall have any effect against third parties until it is deposited in the office of the Parish recorder where the immovable property is situated.
Mindful of the statutory law applicable to the question Pelican raises, we find the case of Southern Casualty Company v. Ross, 179 La. 145, 153 So. 673 (1934), dispositive of the issue presented. In Southern Casualty Company, when met with an argument similar to that presented herein, the Supreme Court stated:
"If the public record is considered as the sole standard by which those rights are to be determined, the community can always know with certainty what conventional or judicial mortgages exist on a *401 man's property, and can deal with him securely. But if instead of looking to the record, courts let in proof of unsuccessful diligence of the creditor to get his mortgage recorded, and the remissness or fault of the public officer, all of the security and certainty contemplated by our registry system is gone, and a wide door is open to injustice and frauds."
Moreover, we find Pelican's actions belie its argument. If intent was determinative of ranking, as espoused by Pelican, it would have been superfulous for it to have hired an attorney to examine the public records and guarantee that it had a first mortgage on the property in question.
Pelican's reliance on Meyer v. Comegys, 147 La. 851, 86 So. 307 (1920), is misplaced. In Meyer, the issue before the court was whether a boundary line should be determined according to a line shown on a plat, or controlled by the actual location of a road upon the ground. Though the court referred to the intention of the parties as a consideration in the location of the boundary, it is clear that there was no judicial pronouncement in that case about the ranking of competing mortgages, the public records doctrine or the law of registry.
In a related argument Pelican contends that Security was not a third party as contemplated by law because the evidence does not show that at any time it relied upon the public records to establish its desired ranking. Pelican's argument is convoluted and, if accepted, would make the public records doctrine meaningless. "From the standpoint of the operation of the public records doctrine, knowledge is an irrelevant consideration." Phillips v. Parker, 483 So.2d 972, at 976 (La.1986). Blame for Pelican's failure to secure a first mortgage can not be thrust upon Security who correctly recorded its collateral mortgage for its protection.

LEGAL SUBROGATION
Pelican, relying on the provisions of LSA-C.C. Art. 1829 and language in Texas Bank of Beaumont v. Bozorg, 457 So.2d 667 (La.1984), next argues that it was subrogated to the rights of those creditors it paid who had mortgages recorded superior to that of Security, namely: First Bank and itself.
LSA-C.C. Art. 1829 provides in pertinent part:
"Subrogation takes place by operation of law:
(1) In favor of an obligee who pays another obligee whose right is preferred to his because of a privilege, pledge, or mortgage;
(2) In favor of a purchaser of ... immovable property who uses the purchase money to pay creditors holding any privilege, pledge, or mortgage on the property;..."
From the outset we note that Pelican can not rely on the provisions of LSA-C.C. Art. 1829(2) because it was not a purchaser as required by the provisions of that article. Likewise, we also find that Pelican is unable to take advantages of the provisions of paragraph (1) of that codal article because it cancelled the mortgages from the public records which it relies upon for its subrogation claim. It is settled law that a subrogor has only those rights which its subrogee has. In the present case, because of the cancellation of the superior mortgages, Pelican no longer possesses superior rights to exercise against Security as it relates to the immovable property sub judice. In accord see, Allied Mortgage and Development Company v. Warner, 185 So.2d 635 (La.App. 1st Cir.1966); and Abbeville Rice Mill v. Shambaugh, 115 La. 1047, 40 So. 453 (1906). Whatever rights Pelican obtained by paying superior creditors were extinguished when those creditors' rights were cancelled by Pelican from the public record.
We further find that the Texas Bank of Beaumont (hereafter TBB) case is distinguishable on the facts. The critical difference in that case is that when First Metropolitan Bank of Jefferson (hereafter FMB) transferred and assigned Bozorg's collateral mortgage, the mortgage note and promissory note to TBB, the reported decision indicates no cancellation of FMB's recorded collateral mortgage. Whereas, in the case sub judice it is uncontroverted *402 that the two superior mortgages relied upon by Pelican were cancelled from the public records. Therefore, the subrogation argument which was beneficial to TBB does not extend to Pelican.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Pelican.
AFFIRMED.