(120 So. 384)

No. 29616.

**BERGERON v. BABIN et al.**

Jan. 28, 1929.

Wurzlow & Watkins, of Houma, for applicants.

LAND, J. This is an action to establish the boundary line between the tracts of land owned respectively by the plaintiffs and the defendants.

"It is admitted by the defendants that that portion of Section 85 in Township 16 South, Range 17 East, which lies immediately in the rear of Sections 60 and 61, same Township and Range, is the property of and belongs to the plaintiffs in this suit, and it is admitted by the plaintiffs that the rear portions of Sections 60 and 61 claimed by defendants belong to them, and that the point of contact of the respective properties of the plaintiffs and defendants is the Government line which separates the rear of Sections 60 and 61 from Section 85, and that the point of difference

between the litigants in this suit is the physical location of the Government line." Tr. p. 51.

This suit was filed in the district court of Terrebonne parish five years ago. Three surveys have been made by T. Baker Smith, civil engineer and surveyor, under orders of. the district judge of that parish. The case has been before the Court of Appeal, First Circuit, three times, and was ordered remanded in its last decision to make the proprietors in sections 58, 59, and 85 parties.

■ Since the judgment can affect only the parties to the suit, we do not deem it necessary to force into this litigation third persons, who have not voluntarily intervened to assert their rights. The only necessary parties to the present suit are the plaintiffs and the defendants, who are in court and demand that the boundary line between their respective properties be established. We have before us all the facts that are available in determining the relocation of the original division line between sections 60 and 61 and 85, and, in our opinion, a final determination of the line in dispute should be made without further delay.

■ In the first survey, T. Baker Smith, surveyor appointed by the district court of Terrebonne parish, commenced at the S. W. corner of section 63, and running thence according to the courses and distances of the government field notes, established the line of division between these sections. This survey checked with the S. W. corner of section 53. Both of these corners are indicated by government bearing trees which are still standing. The survey was approved and homologated by the lower court. Tr. 11, 15, 32, 57.

On appeal to the Court of Appeal, First Circuit, the judgment was set aside, and it was ordered that a second survey be made from "approved Government corners on Bayou Blue," and that "all corners of Sections 60 and 61 adjoining and. next to Section 85 be

verified and proven by measurements thereto from Bayou Blue in the same way in which they were originally located, as well as from the Government corners at the Southwest corners of Sections 53 and 63." Tr. 81, 82.

The second survey was made. Tr. 86.

The surveyor ran the line between sections 60 and 61, from the back corner of these sections established on the first survey from the S. W. corner of section 63. The traverse down Bayou Blue in front of sections 60 and 61 failed to reveal any old trees standing or any indication of old government corners, and for these reasons the survey was not completed. On a previous survey, the surveyor had made a thorough search along the right descending bank of Bayou Blue, for a distance approximately of two miles above and below the line between sections 60 and 61, and was unable to locate any corners.

In his procès verbal he states:

"I do not now believe that it is possible to locate any government corners along Bayou Blue. Therefore I conclude to abandon any hope of finding any government corners along Bayou Blue.

"I am of the opinion that the government corner used in my previous survey and shown by my map and procès verbal should control, in the relation (relocation) of the line between Sections 60 and 61 and 85 in T. 16 S. R. 17 E." Tr. 88, 89.

Although it was not possible to locate government corners on Bayou Blue, the second survey was set aside by the district judge, and a third survey was ordered to be made, in compliance with the order of the Court of Appeal. Tr. 95.

The third survey was made. Tr. 102. Although duly notified to be present, the defendants failed to appear at this survey and all previous surveys.

The last survey was started at the S. W. corner of section 63, at a post in the middle of

Bayou Coteau, indicated by a government bearing tree; there being no other government corner near the line of survey.

From this corner, the back lines of sections 63, 62, 61, 60, 59, 58, and 57 were located, according to the government field notes. The side lines of sections 60 and 61 were run from the back corner of these sections, and were projected into Bayou Blue on account of a deficiency in area. The trial judge accepted the division line between sections 85 and sections 60 and 61 as established by the survey, but ordered in the judgment that the survey be pushed back towards the division line between these sections, from points reached on Bayou Blue, before the side lines of these sections were projected into the bayou.

This judgment was set aside by the Court of Appeal, the return of the surveyor disapproved, and the case was remanded for the purpose of making the owners in sections 58, 59, and 85 parties to this suit. We now have this judgment before us for review.

The main bone of contention, as far as the defendants are concerned, is as to the correct location of Bayou Coteau, designated as Bayou Coto in the government field notes. Defendants contend that this bayou is north of the division line between section 85, and sections 60 and 61 owned by them, and that the side lines of these sections cross the bayou before reaching the rear of the sections, or the division line in dispute.

Plaintiffs' property has a frontage of six arpents on Bayou Terrebonne, and extends east between parallel lines through section 85 to the back line of sections 60 and 61, and is 47 arpents and 52 feet in depth.

Defendants' property has a frontage on Bayou Blue of 28 chains, according to the government field notes and extends northeast from the division line between sections 85 and 60 and 61 to corners on the right descending bank of Bayou Blue, from which these sections were surveyed. The original side lines between sections 59 and 60 are 114.86 chains; between sections 60 and 61, 116.36 chains; and between sections 61 and 62, 116.-36 chains.

See government map and field notes furnished by register of state land office. Tr. 38.

As a matter of fact, there is a shortage of 2 links in the width of each of these sections and of the adjoining sections, reducing the width of each to 13.98 chains, a fact that does not affect the proper location of the division line in question.

The contention of defendants as to the location of Bayou Coto, however, is not supported by the field notes of the government survey.

In section 57, starting from corner on Bayou Blue, Bayou Coto is reached at the end of 116.36 chains, and a post is set "on the bank." Tr. 40.

In section 58, "cane on Bayou Coto" is reached at the end of 109 chains, and a post is set at the end of 114.86 chains, without any indication in the field notes that the bayou had been reached or crossed in the survey. Tr. 40.

In section 59, "cane on Bayou Coto" is reached at the end of 105 chains, and a post is set "in the cane" at the end of 114.86 chains. Tr. 41.

In section 60, "cane on Bayou Coto" is reached at the end of 111 chains, and a post in set "in the cane" at 114.86 chains. Tr. 41. In sections 61 and 62, a post is set at the end of 116.36 chains, and no reference to Bayou Coto is made. Tr. 42. In section 63, a post is set "in Bayou Coto" at the end of 116.36 chains. In section 57, a post is set "on the bank of Bayou Coto," which is not reached again in the field notes until a post is set "in the bayou" at the S. W. corner of section 63.

In sections 51, 53, and 55, the government field notes expressly state that Bayou Coto is *reached* at 116.36 chains, at 112 chains, and

at 115 chains from corners on the bank of Bayou Blue, thereby showing that the field notes make a clear distinction between *reaching Bayou Coto* and reaching "*the cane* on Bayou Coto." Tr. 31, 31½, 32.

This bayou is eliminated from serious consideration in this case, because the incorrectness of the government map in locating the bayou above the division line between sections 60 and 61 and 85 is shown by the following facts:

1. The government field notes locate the S. W. corner of section 63 *in the middle* of Bayou Coto, while the government map locates the bayou some 3 or 4 chains above or north of that corner.

2. The government field notes locate the S. W. corner of section 57 *on the bank* of Bayou Coto, while the map locates the bayou 8 or 10 chains north of that corner.

3. Section 63 is 19.10 chains, or over 1,260 feet, further south than sections 60 and 61 and, even though Bayou Coto ran in the direction indicated by the government map, it could hardly reach or touch the rear or end line of sections 60 or 61, and much less pass some 3 or 4 chains above or north of their rear or end line.

4. There is nothing in the government field notes of sections 60 and 61 to show that their side lines cross Bayou Coto, or even reach its bank. The location of Bayou Coto, therefore, has nothing to do with the proper location of the rear or end lines of sections 60 and 61, the boundary line in dispute.

After a most thorough and diligent search on the right descending bank of Bayou Blue, the surveyor appointed by the court was not able to find or locate, at the upper corners of sections 60 and 61, any of the original government corners, or bearing trees called for by the government field notes, for the reason "that they have all been destroyed by improvement, such as clearing of land, cutting the timber for saw-mill purposes," etc., as stated in the procès verbal of the survey made by him. Tr. 104.

The only government corners found by the court surveyor were at the S. W. corner of section 63, identified by a bearing tree, a cypress 72 inches in diameter, S. 88 degrees E. 64 links, and a government corner between sections 53 and 54, identified by a large cypress marked "S. 53 and S. 54." Tr. 56, 57, 60, 61.

The field notes of 63, at the end of 116.36 chains, call for "a post in the Bayou Coto, a cypress S. 88 E. 64 l'ks." Tr. 42.

The call in the field notes of section 53 is: "119.86 chains to the corner, a large cypress marked S. 54 S. 53." Tr. 32.

The bearing trees are fully identified by the court surveyor. There is no evidence whatever in the record impugning the identity of either one of these trees as an original bearing tree, or its exact location.

The only testimony in the record as to the surveys made in this case is that of the court surveyor. Neither of the defendants took the witness stand, nor did either of them produce a surveyor or other witness to prove the existence of any other known or accepted corner at any of the corners of sections 60 and 61, although one of the defendants pointed out to the surveyor an iron post as the front corner of sections 59 and 60. The defendants in this case have relied entirely upon the government map and the courses and distances of the government field notes to locate the lines and corners of the survey of sections 60 and 61. See Answer, art. 8.

The court surveyor began at the S. W. corner of section 63, a government corner fully identified by a bearing tree, and, following the courses and distances of the original field notes, established the division line between sections 60 and 61 and section 85, and found and relocated the government corner between sections 53 and 54. From these known corners, he has also established the

side lines of sections 60 and 61 and their front lines, and has extended the lines into Bayou Blue, because, when run by him to the right descending bank of the bayou, a deficiency was created in the area of these sections.

The trial judge accepted the division line between section 85 and sections 60 and 61, as established by the court surveyor,· but ordered the survey pushed back from points reached by him on the right bank of Bayou Blue towards the division line between these sections.

It is apparent that the corners on Bayou Blue, recognized by the lower court, are not identified either by original bearing trees or established by the courses and distances of the field notes of the government survey, in running from the known government corners between sections 63 and 64, and sections 53 and 54. They are therefore purely arbitrary points, which we cannot accept as true corners.

Section 63, at the S. W. corner of which the original bearing tree is located, and section 53, at the S. W. corner of which the other bearing tree was found, are in the same township and range with sections 60 and 61, owned by defendants, and the rear boundary lines of sections 63, 62, 61, 60, 59, and 58 form the division line between these sections and section 85, which is also located in the same township and range.

The S. W. corner of section 63 is not only a government corner, fully identified by the original bearing tree, but has the advantage of proximity to the rear lines of sections 61 and 60, and the courses and distances are readily run from this corner, in relocating the rear boundary line of sections 60 and 61, established by Mark Valentine, deputy surveyor, in the year 1831.

It follows, therefore, not only as a matter of law, but also as a matter of practical surveying, that the front lines of these sections must be established by courses and distances run from the true corners in sections 63 and 53, whether the result be a deficiency or an excess in sections 60 and 61.

In surveying the line between sections 59 and 60, the surveyor, after reaching the right descending bank of Bayou Blue, projected the line 1 chain into the bayou because of a shortage in the area. And in surveying the line between sections 60 and 61, the surveyor projected the line into the bayou 69 links for the same reason.

The end lines of sections 60 and 61, as shown by the government field notes, were run at an angle south 52 degrees east, while the side lines were run at an angle north 38 degrees east or, in other words, the division line in dispute in this case is *perpendicular*, or run at *a right angle to the side lines* of sections 60 and 61.

The judgment of the lower court ordered the surveyor to push back the division line upon section 85, 69 links at the point "F" on that line, and 1 chain at point "H" on the same line. As the depth of plaintiffs' property is 47 arpents and 52 feet, and extends to the division line, the effect of the order of the lower court was to carve the deficiency out of the rear end of plaintiffs' tract, at its point of contact with the division line between the properties.

The effect of this encroachment was to create a figure, with one end 69 links, the other end 1 chain; and the perpendicular division line, completely displaced, forms the lower side, while the side lines of sections 60 and 61 remain intact.

The mere fact that section 85 was not surveyed in the year 1831, at the time these sections were laid out, does not justify the invasion of plaintiffs' boundary in this manner. The plaintiffs have only the area called for by their deed, and the rear end of their property at the division line is fully protected by the government corners at the S. W. corners

of sections 63 and 53, although a shortage exists in sections 60 and 61.

To hold otherwise would be to make these ancient landmarks yield to courses, distances, and quantity, and to reject the time-honored landmarks of our own jurisprudence, which has held uniformly from the beginning that maps, courses, distances, and quantity must yield to monuments, natural or artificial, used to mark the lines and corners of the original survey. Barker v. Houssiere-Latreille Oil Co., 160 La. 52, 106 So. 672; Mahaffey v. Miller, 159 La. 610, 105 So. 731; City of Shreveport v. Simon, 132 La. 71. 60 So. 795.

It must be observed, also, in this connection, that the surveyor made a careful examination of the old iron post, S. 38 degrees W. 4.66 chains, and N. 52 degrees W. 41 links, claimed by one of the defendants to be the front corner of sections 59 and 60 on the bank of Bayou Blue, but could not find any evidence whereby he could identify the post as a government corner. The defendants have neither taken the witness stand, nor have they produced any surveyor or witness to prove when or by whom this post was placed in its present position. We have searched the government field notes of sections 59 and 60 in vain to find any indication of a bearing tree that identifies the post in question.

The line run from the S. W. corner of section 63 to the S. W. corner of section 53, not only checks with that corner, but also with the corner of section 57 "on the bank of Bayou Coto." The lines projected from the government corners, S. W. corners of sections 63 and 53, to the right descending bank of Bayou Blue, also check with the courses and distances of the government field notes. Tr. 127, 126.

The fact that known corners on the back lines of these sections not only check with each other, but with corners established on the right bank of Bayou Blue run from these known corners, induces us to believe that, during the hundred years since the survey of these sections, the banks of Bayou Blue must have changed from their former location.

The first survey made by Baker T. Smith, under the orders of the district court, establishing the division line between sections 60 and 61 and section 85, was homologated and approved and, in our opinion, is correct.

This judgment, however, was reversed by the Court of Appeal, and a new survey ordered.

Since the institution of this suit, five years ago, the original plaintiff has departed this life, and his surviving widow, Mrs. Helen Brien, and his heirs, have been made parties plaintiff.

The defendants also have conveyed their property to Harris Gagne and Ashby W. Pettigrew, who have been made parties defendant.

For the reasons assigned, it is ordered that the judgment of the Court of Appeal, First Circuit, disapproving the return of the surveyor, and requiring the remanding of this case, in order that the owners in sections 58, 59, and 85 may be made parties to this suit, be and is hereby annulled and reversed.

It is now ordered, adjudged, and decreed that plaintiffs, Mrs. Helen Brien, surviving widow of Alfred Bergeron, individually and as natural tutrix of the minors, Noel, Ashley, and Mamert Bergeron, and Mrs. Nola Bergeron, wife of Douglas Giroir, Mrs. Lorena Bergeron, wife of Wiley Boudreaux, Easton Bergeron, and Ouida Bergeron do have and recover judgment against defendants, Harris Gagne and Ashby W. Pettigrew, approving and homologating the survey made of the boundary line between the properties of plaintiffs and defendants by T. Baker Smith, surveyor, on the 8th day of June, 1923, the procès verbal of which and map accompanying same having been filed in the lower court on the 13th day of June, 1923.

It is accordingly ordered, adjudged, and decreed that the line fixed and established in said survey and indicated on the map accompanying the procès verbal of said survey by the letters "F," "G," and "H" on the rear, or end line of sections 60 and 61 in township 16 south, range 17 east, be and the same is hereby decreed to be the boundary line between the respective properties of plaintiffs and defendants.

It is further ordered and decreed that said boundary line, as therein fixed, be marked on the ground with permanent monuments, all in accordance with law, and that the costs of survey be paid one half by the plaintiffs and the other half by defendants, and that all other costs, including the costs of appeal and of this suit in the lower court, be paid by defendants.