TATE, Judge.
This is a boundary action.
The defendant-appellant (“Shady-side”) had in 1947 sold the eastern portion of a large plantation to the Grand Woods Corporation, which four months later conveyed this same property to the plaintiffs. The recorded conveyances in practically identical terms described the property sold as:
“That certain tract * * * designated and described on the Map * * * by the Orange Colored Lines, said map * * * attached to [the initial deed] and made part of [both deeds,] * * * [and] containing one thousand fifty (1050) acres, more or less. * * *” (Italics ours.)
This tract was bounded on its west by the property retained by Shadyside. Presently at issue is the location of the line between the two estates where they thus bound one another.
The District Court fixed the disputed boundary in accordance with the courses and distances depicted by the recorded map describing the plaintiffs’ tract and forming part of the conveyances thereof. The defendant-appellant contends that instead the boundary should have been established along another line not on the recorded map but intended by itself and Grand Woods (plaintiffs’ vendor) to be the western limit of plaintiffs’ tract.
The disputed line is shown by the conveyance map to be approximately 7,250 feet in length. At each of three points along its interior length is shown a symbol denoting an iron pipe marker. According to evidence (the admissibility of which is contested by plaintiffs), these stakes were fixed on the ground as the boundary line prior to the sale between Shadyside and its initial vendee. Through surveying error, however, instead of showing the line marked by these three iron pipes, which line intersected a section line to form a corner; the conveyance map shows a western boundary line commencing at a point 11.66 chains (i. e. 769.56) feet westward of the intended corner. The map line runs northerly at a bearing of N 10° E as compared with a northerly bearing of N 8° 37' E for a line drawn on the ground through the stakes. The location of the iron pipes on the ground were, respective *893 ly, 440, 540, and 630 feet east of the boundary line depicted by the conveyance map.
We think our learned trial brother correctly sustained plaintiffs-appellees’ contentions that their boundary should be fixed according to their recorded title and that parol evidence is not admissible to diminish the limits of their property thus clearly and unambiguously reflected by the public records at the time of their acquisition. LSA-C.C. art. 2276; LSA-R.S. 9:2721.
For a purchaser of immovable property in Louisiana acquires title according to the public records and is not bound or affected by unrecorded claims or equities. See Blevins v. Manufacturers Record Publishing Co., 235 La. 708, 105 So.2d 392, extensively summarizing the well settled jurisprudence. Where third parties subsequently purchasing are concerned, a boundary is fixed according to their recorded titles and not according to a differing intention on the part of their ancestors in title at the time that the separate estates were created, Hunter v. Forrest, 183 La. 434, 164 So. 163; nor may clearly defined bounds per the recorded deed be diminished because of any discrepancy between the acreage indicated by the deed and the actual acreage on the ground of the unambiguously described tract, W. B. Thompson & Co. v. McNair, 199 La. 918, 7 So.2d 184.
Defendant cites several cases in which parol evidence was admitted to establish the boundaries of the tract according to the intention of the original vendors. But such decisions involve recorded descriptions which by their own terms were indefinite or ambiguous so as to require in explanation evidence extraneous to the public records: Fleming & Baldwin v. Scott, 26 La.Ann. 545 (“northwestern third of Hollywood plantation”); Ryan v. Laprairie, La.App. 2 Cir., 84 So.2d 854, 856 (“all of the acreage as contained within the present fence”); Edwards v. Walker, 1 Cir., 15 La.App. 664, 132 So. 773 (a line drawn “so as to include his Millards home gin and stables”).
The single case cited by defendant which permitted a variation from the boundaries set forth by an unambiguous recorded description because the latter did not reflect the intended boundaries is Brulatour v. Teche Sugar Co., 209 La. 717, 25 So.2d 444. But in that case, the parties against whom the deed was reformed on the ground of error were the heirs of the original vendor, who of course cannot rely on the public records doctrine. However, as against a third party purchaser, the unambiguous recorded title cannot be varied because of error in the description in deeds prior to his acquisition. W. B. Thompson & Co. v. McNair, 199 La. 918, 7 So.2d 184.
Based upon the circumstances that the recorded plat shows the disputed boundary to have been marked by the three iron pipes, the defendant-appellant contends that the western boundary should be established to accord with the iron pipes to be found on the ground rather than by the courses and distances reflected by the recorded title, citing the recognized rule that in locating land lines natural or artificial monuments should be given more weight than courses and distances.[1] Defendant further contends that, in any event, the discrepancy between the monuments found on the ground and the recorded courses and distances permits parol evidence to explain that the monumented rather than the recorded line was intended by the parties to the initial sale to be the western limit of the tract sold.
*894 As defendant contends, monuments do ordinarily control over courses and distances in the interpretation of maps or plats. However, the cases cited by defendant concern the interpretation of plats or maps already admissible to explain conflicting or incomplete recorded .descriptions ; they are not authority for the proposition that monuments may be used to vary courses or distances which, as here, are unambiguously set forth by the recorded conveyance and which courses and distances do not conflict with other bounds shown by the recorded title(s) in question.
Further, in the cited cases the discrepancies between the bounds fixed by the courses and distances of the map, and the bounds fixed with reference to the natural or artificial monuments also depicted by such plat in describing the tract, were of such a nature as reasonably to place a third party purchaser on notice that there was question as to whether the correct bounds of the estate were reflected by the monuments instead of by the courses and distances. These cases involved a conflict of the map courses and distances with, respectively: a monumented line of an adjacent Spanish grant shown by the ancient plat to form the western boundary (City of New Orleans v. Joseph Rathborne Land Co., 209 La. 93, 24 So.2d 275); other lot lines of the subdivision which were unquestioned (Smith v. Chappell, 177 La. 311, 148 So. 242); “ancient landmarks” of bearing trees (Bergeron v. Babin, 167 La. 833, 120 So. 384); or “ancient monuments” of streets, stakes, buildings, and prior occupancies (Mahaffey v. Miller, 159 La. 610, 105 So. 731). In these instances, the monuments shown by the plat were found to be more consonant with the intent reflected by the conveyance deed than the erroneous courses and distances.[2]
 Thus, in such cited cases, the discrepancy arose from conflicting measurements and bounds found in the plat or the recorded title itself; and parol evidence might therefore have been available to explain such conflict. But in the present case, no such discrepancy is manifest from the recorded plat itself, or even from the attempt to trace on the ground the limits shown by it, as might place a third party purchaser on notice that the latter limits set forth by the recorded description were unclear or uncertain, so as to admit of explanatory parol evidence. For parol evidence is not admissible to create ambiguity and uncertainty but only to explain it. See, e. g., Blevins v. Manufacturers Record Publishing Co., above cited.
The mere indication on the recorded plat that the western boundary line, so clearly described by courses and distances, was marked along its U/2 mile length by three iron pipes does not constitute notice so far as third party purchasers are concerned, that any pipes on the ground rather than the map courses and distances might be intended as the true boundary. Nor does the absence of such surveying stakes on the ground at the place indicated by the plat raise any question that the line according to the recorded measurements inaccurately depicts the intended boundary. “It is very generally recognized that a call for 'stakes’ in the descriptive terms of a deed is not sufficient to control course and distance, unless the deed itself affords data from which the term ‘stake’ can be given a definite placing. * * * They are usually of such a transitory nature, so liable to be destroyed or in some way removed, by chance or otherwise, that they are not regarded as monuments of boundary at all, but are considered only as imaginary points to be fixed and determined by a correct survey of course and distance, if such calls appear also in the deed,” Nelson v. Lineker, 172 N. C. 279, 90 S.E. 251, at page 252. Cf. 11 C.J. *895 S. Boundaries § S, p. 545: “ * * * Objects, to be ranked as monuments, have been required to have certain physical properties such as visibility, permanence, and stability, and definite location, independent of measurements. * * * ”
In the present case, for instance, only two of the pipes could be found at the time of the trial, and whether they were still located at the same place as at the time of the initial conveyance would depend entirely on parol evidence; for the recorded deed contained absolutely no clue to their true location on the ground. Three surveyors testified that, as a matter of surveying practice, the failure to find the iron pipes on the ground at the place indicated by the recorded plat' would not cause them to question the courses and distances of the recorded plat; nor would any importance in the location on the ground of the recorded plat line be attached to the presence of the three stakes, if by chance they were found in the woods at distances varying between 440 and 630 feet from the boundary line reflected by the recorded title.
Similarly, a variation in acreage between that stated in the recorded deed and that found within the specific limits conveyed by the deed is not, according to the long settled jurisprudence, such a discrepancy as to put a third party purchaser upon notice that lesser limits were intended to be conveyed than those plainly described by his recorded title, or as to create an ambiguity so as to permit the admission of extraneous evidence to diminish the clearly described recorded limits of the tract sold. Blevins v. Manufacturers Record Publishing Co., 235 La. 708, 105 So.2d 392; W. B. Thompson & Co. v. McNair, 199 La. 918, 7 So.2d 184.
For the above reasons, we affirm the judgment of the trial court fixing the boundary in accordance with the recorded title.
Affirmed.

. Cf., the often quoted summary by Judge Dawkins, Sr., in Meyer v. Comegys, 147 La. 851, at page 857, 86 So. 307, at page 309: “ * * * the legal guides for determining a question of boundary, or the location of a land line, in the order of their importance and value, are: (1) Natural monuments; (2) artificial monuments ; (3) distances; (4) courses; and (5) quantity. But the controlling consideration is the intention of the party or parties.”

. See also Theriot v. Caffery, 160 La. 72, 106 So. 698 and Moyer v. Comegys, 147 La. 851, 86 So. 307, where courses and distances or quantities shown by plats were held under the facts of said eases to govern despite discrepancies with natural or artificial monuments shown thereby-