732 So.2d 677 (1999)
Ruby Abshire HARRINGTON, Plaintiff-Appellee,
v.
Alton ABSHIRE, Defendant-Appellant.
Camilia Abshire Mire, Plaintiff-Appellee,
v.
Alton Abshire, Defendant-Appellant.
Nos. 98-1651, 98-1652.
Court of Appeal of Louisiana, Third Circuit.
March 31, 1999.
*679 Lyle Olen Fogleman, Jr., Crowley, for Ruby Abshire Harrington.
Gary Evans Theall, Abbeyville, for Alton Abshire et al.
Before THIBODEAUX, PETERS, and PICKETT, Judges.
PETERS, J.
In 1981, Clodis Abshire and his wife, Olita Simon Abshire, executed an act of donation in which they transferred ownership of some of their land in Vermilion Parish to their five children, Alton Abshire (Alton), Ruby Abshire Harrington (Ruby), Alice Abshire Foreman (Alice), Hilda Abshire Lege (Hilda), and Camilia Abshire Mire (Camilia). They divided the donated property into five separate tracts and transferred one to each of the five children. The current litigation arose after the death of Clodis and Olita Abshire when Ruby and Camilia each brought an action for injunctive relief against Alton to obtain the removal of levees he had constructed on part of the properties received by them in the donation and to recover damages. Alton, joined by his sisters, Hilda and Alice, reconvened seeking reformation of the donation and reimbursement from Ruby and Camilia for their share of the costs of resurveying the property. The actions were consolidated, and after trial, the trial court rendered judgment in favor of Ruby and Camilia and against Alton, Hilda, and Alice. Alton, Hilda, and Alice appeal this judgment.

DISCUSSION OF THE RECORD
Between 1928 and 1947, Clodis and Olita Abshire purchased approximately 165 to 170 acres of property in Vermilion Parish in three separate acquisitions. The acreage acquired in the acquisitions was contiguous, resulting in a somewhat rectangular-shaped composite tract of land. A fifteen-foot ditch, being the point of contention in this litigation, ran along the eastern boundary of the composite property. However, it is unclear from the record whether Clodis and Olita actually acquired title to the ditch.
At some point, Clodis approached Reule Bourque, an attorney, concerning his desire to divide the tract and donate the property to his five children. Bourque testified that Clodis informed him that he wanted to give his children equal shares of "arable land" or crop land and that he wanted to omit the ditch on the eastern boundary from the donation. Additionally, according to Bourque, Clodis explained to him that Camilia was to have the eastern-most portion of the property adjacent to the ditch. Bourque testified that Clodis specifically stated an intent to leave the ditch out of the donation because he did not wish to include it in Camilia's (or "Meon" as he referred to her) share of the property. Instead, Clodis intended to give Camilia completely viable, arable property similar to that being donated to the other children. When asked about Clodis's intentions concerning the disposition of the ditch, Bourque testified: "The only thing [Clodis] didn't want to do is have the one he called "Meon" get on that ditch." Bourque also explained that Clodis believed he owned a portion of the ditch but that he did not know how much of the ditch he owned, the acquisitions having made no reference to the ditch. In any event, according to Bourque, Clodis thought that the ditch was for public use.
In an attempt to comply with Clodis's instructions, Bourque contacted Clarence Thibodeaux, a registered land surveyor, who surveyed the property and prepared a plat dividing it into five tracts as instructed by Clodis. Thibodeaux testified that Clodis wanted to use the "value part" of the property or the crop land and did not ask him to determine his eastern boundary. Instead, Clodis told Thibodeaux where he wanted the eastern boundary to fall for the survey. Specifically, Thibodeaux explained that Clodis wanted the eastern line of the donated property to be *680 the western side of the ditch. Thibodeaux established the eastern line accordingly.
Thibodeaux prepared a plat dated February 21, 1981, which divided the property into five tracts numbered one through five, with two smaller tracts carved from Tract 1 and designated Lots 1A and 2A and one smaller tract carved from Tract 5 and designated Lot 5A. Bourque testified that once he obtained the plat, he and Clodis inspected it and that Clodis expressed his satisfaction with the proposed division.
On April 27, 1981, Clodis and Olita executed the act of donation transferring Tract 1 to Alton, containing 32.66 acres, which when combined with Lot 1A, which he had apparently previously acquired from his parents, totaled 33.35 acres; Tract 2 and Lot 2A to Alice, containing 32.35 acres and one acre respectively; Tract 3 to Ruby, containing 33.35 acres; Tract 4 to Hilda, containing 33.35 acres; and Tract 5 to Camilia, containing 32.66 acres, which when combined with Lot 5A, being her previous acquisition from her parents, totaled 33.35 acres. Thibodeaux's plat is attached to the act of donation. The plat reflects that Tract 1 is the western-most tract, and that the remaining tracts run sequentially from west to east. All the children viewed the plat and accepted the donation without objection.
Apparently no complaints or disagreements concerning the donation were expressed by any party while Clodis and Olita were alive. However, in 1995, after both parents had passed away, Ruby's son, Lovelace Harrington, Jr., contacted Wilbert Guidry to conduct a new survey. The testimony is in dispute regarding the scope of the intended survey. Lovelace, Ruby, and Camilia testified that Guidry was contacted to survey only Ruby's and Camilia's tracts in anticipation of dividing their property among their children. Guidry, Alton, Hilda, and Alice asserted that Guidry was retained to resurvey the whole estate in anticipation of reapportioning the property equally among the five children. However, Guidry did testify that at some point Ruby and Camilia had asked if he would partition their tracts of land.
In any event, Guidry surveyed the entire estate and prepared a new plat dated October 18, 1995. In preparing this plat, Guidry did not determine the original boundaries according to the titles creating them. He simply accepted the east side of the ditch as the eastern boundary based on Alton's instructions and his observation of old fence posts located on the eastern side of the ditch. The inclusion of the ditch had the effect of increasing the size of each tract by .49 acres. However, it also had the effect of changing the eastern boundary line of all the tracts. Alton's eastern boundary moved three feet east, thereby taking three feet of Alice's property as described in the donation deed; Alice's eastern boundary moved six feet east, thereby taking six feet of Ruby's property as described in the donation deed; Ruby's eastern boundary moved nine feet east, thereby taking nine feet of Hilda's property as described in the donation deed; Hilda's eastern boundary moved twelve feet east thereby, taking twelve feet of Camilia's property as described in the donation deed; and Camilia's eastern boundary moved fifteen feet to the east side of the ditch.
Alton then constructed levees on the six-foot and twelve-foot encroachment areas now claimed by Alice and Hilda but belonging to Ruby and Camilia according to the donation deed. Neither Ruby nor Camilia gave Alton permission to construct the levees. Despite a demand that he remove the levees, Alton refused. As a result, Ruby and Camilia filed these consolidated suits seeking to have Alton remove the levees, to enjoin Alton from erecting and maintaining a levee or any other barrier on their property, and to recover damages. Alton, with Hilda and Alice joining him, filed a reconventional demand seeking reformation of the donation and reimbursement from Ruby and Camilia for their share of the costs of resurveying the property.
*681 The trial court rejected the reconventional demand, finding that there was no evidence of error or mistake in the donation and thus no reason to reform the donation. Additionally, it rejected the demand for reimbursement of the Guidry survey cost, awarded Ruby and Camilia judgment against Alton in the amount of $5,250.00 each for trespass damages, enjoined Alton from erecting and maintaining a levee or any other barrier on Ruby's and Camilia's properties, ordered Alton to remove the levees that he had placed on their properties, and ordered Alton to restore the properties to their original condition. Alton, Hilda, and Alice appeal this judgment.

REFORMATION OF THE DONATION
The appellants contend that the trial court erred in failing to find that the donation of April 27, 1981, was based on error and mistake and in refusing to reform the donation. Basically, the appellants assert that a closure error and the omission of the ditch from the plat are sufficient grounds for reforming the donation.
Thibodeaux acknowledged at trial that one entry on the plat was in error in that a bearing on one of the survey lines described the line as running north when it should have indicated the direction as south. This mistake resulted in the property description not closing by roughly forty feet. The record is not clear as to where this error appears, but it did not change or affect the overall integrity of the plat. Thibodeaux testified that the error was a drafting error easily cured by the substitution of an "N" for the "S" on the plat. Even Guidry testified that he understood how such an error could occur and that, in his opinion, it did not invalidate the Thibodeaux survey. According to Guidry, the Thibodeaux survey, when corrected for the directional error, was an extremely acceptable plat resulting from a survey well within standards and acceptable means. Thus, guided by the manifest error standard as set forth in Rosell v. ESCO, 549 So.2d 840 (La.1989), we reject this assignment of error, finding no manifest error in the trial court's refusal to reform the donation based on the direction and closure errors.
As to the omission of the ditch from the act of donation, we also find no error in the trial court's decision. The appellants each testified that they understood that at the time of the execution of the donation, their parents were dividing all of their land. They further asserted that, absent that understanding, they would not have accepted the donation. These assertions conflict with Bourque's testimony that at the time of the donation the children were shown the plat and voiced no objection. The plat clearly excludes the ditch from the partition. Additionally, Hilda admitted that her parents gave each of the five children what they wanted them to have. Moreover, the actual eastern boundary of the Abshire estate was never determined according to title. Guidry testified that it was possible that the ditch may not belong to the Abshire family. Most importantly, the evidence is unequivocal as to Clodis's intention not to include the ditch in the donation. Bourque, who knew Clodis "very well," testified to this fact, and Thibodeaux testified that Clodis told him where he wanted the eastern-most line established.
Thus, we find no manifest error in the trial court's refusal to reform the act of donation. This is not to say that the five children might not perhaps own the ditch in indivision, but that is a matter more appropriately addressed in another proceeding.

TRESPASS
The appellants also contend that the trial court erred in finding a trespass or disturbance of possession by Alton. They assert that Ruby and Camilia failed to establish with certainty the location of the boundary lines between the respective tracts because no markers establishing the *682 boundaries were ever found. Thus, they assert that no evidence was introduced as to where the levees built by Alton were placed.
A trespass occurs when there is an unlawful physical invasion of the property or possession of another person. Gaspard v. St. Martin Parish Sewerage Dist. # 1, 569 So.2d 1083 (La.App. 3 Cir.1990). Alton admitted that he constructed the new levees now in dispute in accordance with the Guidry survey. Thus, the evidence establishes that Alton encroached upon Ruby's and Camilia's properties by six feet and twelve feet respectively. As previously stated, there was no error or mistake in the act of donation made in accordance with the Thibodeaux plat. Thus, Alton encroached upon Ruby's and Camilia's properties to the extent that he built the levees in accordance with the Guidry survey. Moreover, Alton admitted that he did not have Ruby's or Camilia's permission to construct the new levees. Further, he failed to remove the levees even after he was requested to do so by Ruby and Camilia. Therefore, we find no manifest error in the trial court's finding that Alton trespassed onto Ruby's and Camilia's properties.

DAMAGES
The appellants contend that the trial court erred in awarding trespass damages, asserting that Ruby and Camilia offered no evidence of actual damages. We find no merit in this assignment.
In an action for trespass, it is incumbent upon the plaintiff to show damages based on the result or the consequences of an injury flowing from the act of trespass. Bell v. Sediment Removers, Inc., 479 So.2d 1078 (La.App. 3 Cir.1985), writ denied, 481 So.2d 1350 (La.1986). The damages must be proved by a preponderance of the evidence, and this burden of proof may be met by either direct or circumstantial evidence. Id. One who is wronged by a trespass may recover general damages suffered, including mental and physical pain, anguish, distress, and inconvenience. Ard v. Samedan Oil Corp., 483 So.2d 925 (La.1986). Mental anguish does not result of necessity from a trespass or the encroachment on a person's property; even though mental anguish may be compensable, it must be proven with sufficient evidence. Bell, 479 So.2d 1078. However, mental anguish does not require proof that medical or psychiatric care was required as a result of the incident, but minimal worry and inconvenience should not be compensated. Phillips v. Town of Many, 538 So.2d 745 (La.App. 3 Cir.1989).
In the instant case, Ruby testified that she had suffered mental anguish and turmoil. She explained that she has been deprived of the peaceful enjoyment of her property, the ability to divide her property, and the use of her property. She also indicated that in moving her western boundary, Alton had been farming a portion of her property. Camilia testified that she had been inconvenienced by the levee and unable to use her property as she desired in that she wanted to plant something on her property and could not do so. We find no manifest error in the trial court's finding that the levees caused inconvenience and damages to Ruby and Camilia. The trial court obviously credited the testimony of Ruby and Camilia, and their testimony indicated that the levees prevented them from being able to do with their properties as they desired. This intrusion continued through the date of trial in 1998. The appellants do not contest the amount of the damage awards, and thus we will not address that issue.

REIMBURSEMENT FOR THE COST OF THE GUIDRY SURVEY
The appellants also assert that the trial court erred in failing to require Ruby and Camilia to reimburse Alton for their portion of the cost of the Guidry survey. As previously stated, the testimony was in dispute as to the scope of the intended survey. Apparently, the trial court credited *683 the testimony of Lovelace, Ruby, and Camilia and rejected that of the appellants concerning the scope of Guidry's survey. Credibility calls are for the trier of fact. See Rosell, 549 So.2d 840. Based on the record before us, we find no manifest error in the trial court's finding that Ruby and Camilia did not owe reimbursement for the Guidry survey.

GUIDRY SURVEY PLAT
Although Guidry did the field work and calculations on the survey, the trial court refused to allow the Guidry survey plat into evidence because Guidry did not sign the plat because at the time he was only a surveyor in training. Rather, the plat was signed by Eugene M. Sellers of Sellers & Associates, Inc. The appellants contend that the trial court erred in sustaining a hearsay objection to the Guidry plat.
Under La.Code Evid. art. 803(6), a data compilation made and kept in the course of a regularly-conducted business activity, if it was the regular practice of that business activity to make and to keep the data compilation, is not excluded by the hearsay rule. Guidry testified that the survey plat was produced in the regular course of the business of Sellers & Associates, Inc. and that it accurately depicted the measurements and markings he made on the ground. Additionally, he even adopted the plat as his own.
We find that the trial court should have admitted the plat as an exception to the hearsay rule. However, we find that the failure to admit the plat was harmless because evidence apart from the Guidry plat indicated that Guidry included the fifteen-foot ditch in his plat that was not included in the Thibodeaux plat. Further, the trial court's judgment reflects its finding that the property divisions should have been based on the Thibodeaux plat rather than the Guidry plat in any event.

DISPOSITION
For the foregoing reasons, we affirm the judgment of the trial court and assess costs of this appeal to the appellants, Alton Abshire, Hilda Abshire Lege, and Alice Abshire Foreman.
AFFIRMED.