STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

KEVIN DALE GRIFFIN, ET UX.

VERSUS

DORIS JOHN ABSHIRE, ET UX.

************

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT,
PARISH OF VERMILION, NO. 76818-D,
HONORABLE EDWARD RUBIN, DISTRICT JUDGE

************

JIMMIE C. PETERS
JUDGE

************

Court composed of Jimmie C. Peters, Michael G. Sullivan, and John B. Scofield,[*] Judges.

REVERSED IN PART; AMENDED IN PART; AFFIRMED IN PART; RENDERED IN PART.

R. Chadwick Edwards, Jr.
Edwards & Edwards
Post Office Box 217
Abbeville, LA 70511-0217
(337) 893-2884
COUNSEL FOR PLAINTIFFS/APPELLANTS/APPELLEES:
    Kevin Dale Griffin
    Camila Broussard Griffin

J. Isaac Funderburk
Funderburk & Herpin
Post Office Drawer 1030
Abbeville, LA 70511-1030
(337) 893-8140

---

[*]John B. Scofield participated in this decision by appointment of the Louisiana Supreme Court as judge pro tempore.

**COUNSEL FOR DEFENDANTS/APPELLANTS/APPELLEES:**
   Doris John Abshire
   Theresa Pommier Abshire

PETERS, J.

This appeal arises out of a dispute between neighbors over the size, ownership and use of a private road established in a 1951 act of partition. Kevin Dale Griffin and Camila Broussard Griffin (the "Griffins"), husband and wife, are the plaintiffs and defendants in reconvention in the litigation. Doris John Abshire and Theresa Pommier Abshire (the "Abshires"), husband and wife, are the defendants and plaintiffs in reconvention. Dissatisfied with the judgment of the trial court, both sets of litigants have appealed. For the following reasons, we reverse in part, amend in part, affirm in part, and render in part.

## DISCUSSION OF THE RECORD

The litigation stems from an act of partition dated September 21, 1951, dividing the community of acquêts and gains previously existing between Martial Trahan and his deceased wife, Alene Hebert Trahan.[1] In that partition agreement, Martial Trahan and his children[2] divided both movable and immovable property. One of the properties received by Martial Trahan in full ownership was a twenty-five acre tract of land in Section 4, Township 12 South, Range 2 East, Vermilion Parish. The partition agreement described the tract by the property surrounding it rather than by metes and bounds. Of significance to this litigation is the established western boundary of the tract, the Hunter Canal. Because some of the immovable property transferred to his children lay north and west of the twenty-five acres, Martial Trahan granted his children a thirty-foot servitude of passage along its western boundary.

Martial Trahan died on January 21, 1971. On February 12, 1971, his children entered into an act of partition wherein they divided the twenty-five acres as well as

---

[1]Alene Hebert Trahan died on January 12, 1951.

[2]The children were identified in the act of partition as Elier Trahan, husband of Ella Broussard; Edmee Trahan, wife of Harrison Marceaux; Rex Trahan, husband of Nellie Labrie; and Enite Trahan, wife of Lennis Abshire.

other property.[3]  Enite Abshire[4] acquired the west one-fourth of the twenty-five acres

with the remaining three-fourths being divided among the other three children.  This

act of partition continued to describe the divided tracts by the property surrounding

each, and not by metes and bounds.  It described the west boundary of Enite Abshire's

tract as the Hunter Canal.

On November 4, 1982, Enite Abshire transferred 1.431 acres of the property she

obtained in 1971 to her son, Doris John Abshire, and his wife, Theresa Pommier

Abshire.  The cash deed transferring the 1.431 acres described the property as:

> That certain tract or parcel of ground, containing 1.431 acres, more or
> less, and being located in Southeast Quarter (SE¼) of Section 4,
> Township 12 South, Range 1 [sic] East, Vermilion Parish, Louisiana and
> being the same property marked "DORIS ABSHIRE & THERESA
> POMMIER" on a plat of survey prepared by Stephen J. Langlinai [sic],
> P.E., dated August 27, 1982, and attached hereto and made a part hereof.

The attached plat established the location of the 1.431 acres as a generally rectangular

tract extending 370 feet north and south on the east and west boundaries and as

situated north of a line approximately 760 feet north of the southern boundary of Enite

Abshire's property.  The east line of the 1.431 acres corresponded to Enite Abshire's

east property line, but the west line fell thirty-eight feet east of her west property line

along the Hunter Canal.  The plat described the thirty-eight-foot parcel not transferred

as a private right-of-way.  Additionally, the plat extended the thirty-eight-foot-wide

private right-of-way the complete length of Enite Abshire's western boundary.  In

other words, the right-of-way described on the plat was eight feet wider than the

---

[3]In the act of partition, the children were identified as Edmay (Edmee) Trahan, wife of Harrison Marceaux; Elier Trahan, husband of Ella Broussard; Rex Trahan, husband of Nellie Labry (Labrie); and Anite (Enite) Trahan, widow of Lanest (Lennis) Abshire.

[4]Mrs. Abshire was referred to in the February 12, 1971 partition as "Anite Abshire." However, in the September 21, 1951 act of partition and in later deeds, she was referred to as "Enite Abshire."  For consistency in this opinion, we will refer to her as "Enite Abshire."

servitude of passage granted in the 1951 act of partition. The deed did not transfer the Abshires any interest in the right-of-way, but simply described the right-of-way.

On June 12, 1991, or almost nine years after she sold the 1.431-acre tract to Doris John and Theresa Abshire, Enite Abshire divided the remainder of the tract, as well as other immovable property, among her children. In the act of donation transferring the property, four of her children (Hazel Abshire, Roland Abshire, Doris John Abshire, and Linus Abshire) shared the remainder of the west one-fourth of the twenty-five acres, while her remaining children received other properties. The four named children each received a lot measuring 170 feet east and west and 380 feet north and south, with Hazel Abshire acquiring the lot immediately north of Louisiana Highway 696 (the southern boundary of the original twenty-five acres); Roland Abshire acquiring the next lot; Doris John Abshire, who already owned the next lot based on the November 4, 1982 transfer, acquiring the lot immediately north of that acquisition; and Linus Abshire acquiring the northernmost lot. The act of donation described the west boundary of each lot as "the 30 foot right-of-way." Thus, whether intentionally or by inadvertence, Enite Abshire retained ownership of the thirty-foot strip as well as her entire interest in the servitude of passage.

Kevin and Camila Griffin purchased Hazel Abshire's tract on July 8, 1992. In the cash deed, Hazel Abshire also transferred to the Griffins "[a]ll of [her] rights, titles and interest in and to the 30 foot private road right of way which runs northerly along the west side of [the property transferred]." Doris John and Theresa Abshire acquired Roland Abshire's tract on July 19, 1995.

On September 5, 2001, the Griffins instituted suit against the Abshires.[5] In their petition, the Griffins asserted an undivided ownership interest in the thirty-foot servitude of passage and asserted that the Abshires had constructed a fence on the thirty-foot tract in an effort to impede their use of the property, had filed criminal complaints against them for their attempted use of the property, and had trespassed on the tract that they purchased from Hazel Abshire. The Griffins sought closure of a ditch the Abshires had dug along the west boundary of their property, removal of the fence, damages, and attorney fees.

The Abshires answered the petition and reconvened for damages of their own, asserting that the Griffins had obstructed the natural drainage from their property, had prevented them from utilizing the right-of-way, and had interfered with the peaceful possession of their property.

Following a trial on the merits, the trial court entered judgment declaring the servitude of passage to be thirty-eight-feet wide, declaring that the Griffins had acquired an undivided interest in the servitude of passage and rejecting the damage demands of both parties. On appeal, the Griffins assert that the trial court erred in setting the right-of-way width at thirty-eight feet and in failing to award damages for trespass, and the Abshires assert that the trial court erred in concluding that the Griffins acquired an undivided interest in the servitude of passage.

### Griffin Appeal

The 1951 act of partition described the servitude of passage as follows:

[Martial Trahan] . . . does hereby grant, cede, and sell unto [his children], present and accepting, and to their heirs and assigns forever, a servitude of passage and way . . . over the lands hereinabove described and

---

[5]The Griffins also named the unopened succession of Enite Trahan as a party defendant. However, there has been no appearance on behalf of the succession.

received by him . . . . Said Servitude of Passage and Way is to be Thirty (30) feet in width and to be located along the western boundary of [the twenty-five acres] running north and south the distance of the length of the southwest quarter of the southeast quarter of Section Four, township Twelve, south range Two East, in which it it [sic] to be taken, and then west along the southern boundary of [the property transferred to his children].

The 1971 act of partition did not mention the servitude. However, Enite Abshire's 1991 act of donation used the eastern boundary of the thirty-foot servitude of passage as the west boundary of the property, as did Hazel Abshire's 1992 deed to the Griffins and Roland Abshire's deed to the Abshires. The only documentary evidence of a thirty-eight-foot right-of-way appears in the plat prepared by Stephen J. Langlinais and attached to the 1982 deed from Enite Abshire to the Abshires.

Over the objection of the Griffins, Paul Weston Trahan, the son of Rex Trahan, testified at trial that in February of 1970, Martial Trahan and his children (with the help of eight of Martial's grandchildren) measured the twenty-five acres and staked off their proposed respective properties by placing iron pipes on the property corners. He testified that the group staked a thirty-eight-foot right-of-way and that he personally prepared a hand-drawn plat of their work. The extra eight feet, according to the witness, was necessary to accommodate four-foot ditches on either side of the proposed thirty-foot servitude of passage. The trial court allowed the introduction of the hand-drawn plat, dated February 20, 1970, into evidence over the Griffins' objection.

Mr. Langlinais testified that he prepared the August 27, 1982 plat at the request of Doris John Abshire. In preparing the plat, he never examined the public records, never talked to Enite Abshire or any member of the Abshire family other than Doris John Abshire, never determined who placed the pipes in the ground that he was to later rely upon, and relied solely upon the results of his physical survey and the

5

assertion of Doris John Abshire that all of the heirs had agreed to a thirty-eight-foot right-of-way.

During the property survey, Mr. Langlinais found a two-inch iron pipe at the intersection of a north-south fence line and the northern right-of-way of Louisiana Highway 696. He concluded that this iron pipe represented the southwest corner of Enite Abshire's property. When he found a one-inch iron pipe thirty-eight feet east of that point, he concluded that it represented the east edge of the servitude of passage. He then found a three-fourth-inch iron pipe 149.5 feet east of that iron pipe and concluded it represented the southeast corner of Enite Abshire's property. Using these measurements, he inserted a thirty-eight-foot right-of-way on the plat, concluding that this was the owners' intent. He reached this conclusion despite learning at some point during the survey activity that other documents reflected a thirty-foot servitude of passage. The Griffins timely objected to this opinion testimony, and the trial court rejected the objection.

In setting the right-of-way at thirty-eight feet, the trial court stated that it was impressed with the testimony of Paul Weston Trahan and Stephen J. Langlinais. The Griffins assert that the trial court erred in considering the evidence presented by these two witnesses, and we agree.

The issue is not whether a servitude of passage exists, as all agree that such a servitude does exist. Rather, the issue involves the width of the servitude. "For a servitude to be created by title, the instrument must be express as to the nature and extent of the servitude." *Palomeque v. Prudhomme*, 95-0725, p. 8 (La. 11/27/95), 664 So.2d 88, 93. Additionally, "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La.Civ.Code art. 2046. By clear and explicit language, Martial

6

Trahan expressly set forth the nature and extent of the servitude he created in the September 21, 1951 act of partition. He granted a thirty-foot-wide servitude of passage extending north and south along the west boundary line of his twenty-five acres. The grant was separate from the transfer of the land itself. Additionally, nowhere in the 1951 act of partition does one find the mention of an additional four feet on each side of the servitude of passage to accommodate drainage.

Because the language of the 1951 act of partition was clear and explicit and leads to no absurd consequences, parole evidence was not admissible to change its terms. Therefore, the trial court erred in considering the evidence presented through the testimony of Paul Weston Trahan and Stephen J. Langlinais. Without consideration of that evidence, the record overwhelmingly establishes that the servitude of passage is thirty feet wide.

Even considering the testimony of these two witnesses, the February 20, 1970 hand-drawn plat, and Mr. Langlinais' survey, we would reach the same conclusion. Paul Weston Trahan's testimony concerning the four-foot drainage ditches rings hollow when one considers that both the 1951 and 1971 partition agreements identify the west boundary as the Hunter Canal, a drainage conduit in itself. The servitude of passage created by the 1951 document did not begin four feet east of the canal, but immediately adjacent to the canal. Additionally, the hand-drawn plat was prepared almost one year before the 1971 act of partition. Not only did that document not refer to the hand-drawn plat, but Martial Trahan had since died and was not a party to the agreement. The document specifically corresponds to the 1951 partition agreement in that it also describes the west boundary as the Hunter Canal.

Mr. Langlinais' testimony is no less suspect. The guides for evaluating a boundary question have long been recognized by the courts of this state as follows:

[T]he legal guides for determining a question of boundary, or the location of a land line, in order of their importance and value, are: (1) Natural monuments; (2) artificial monuments; (3) distances; (4) courses; and (5) quantity. But the controlling consideration is the intention of the parties or parties. . . . Monuments of the character mentioned are allowed to control, for the reason that in cases where the line is uncertain, but approximately in a given location, these guides are more permanent and possess less of the possibilities of error incident to courses, distances, and area; but when the basis for the rule ceases, as where, admittedly, the *monument does not meet the calls of the deeds*, *then it cannot control*, and must give way to the weaker guides.

*Meyer v. Comegys*, 147 La. 851, 857-59, 86 So. 307, 309 (1920) (emphasis added); *see also Boudreaux v. Shadyside Co.*, 111 So.2d 891 (La.App. 1 Cir. 1959).

Not only do the artificial monuments accepted by Mr. Langlinais not correspond to the 1951 act of partition establishing the servitude of passage, but his acceptance of 149.5 feet as the extent of Enite Abshire's southern boundary does not correspond to the act of donation wherein Enite Abshire's children acquired their interest in her property.[6]

For the reasons set forth above, we reverse the trial court's determination that the right-of-way in question constituted a thirty-eight-foot right-of-way. We enter judgment declaring a thirty-foot right-of-way as provided for in the partition agreements previously described.

### *Abshire Appeal*

The Abshires assert in their appeal that the trial court erred in recognizing the Griffins' undivided interest in the servitude of passage. They base this assertion on the lack of evidence in the record concerning Hazel Abshire's interest in Enite Abshire's estate.

---

[6]The act of donation, as well as the hand-drawn plat attached to the instrument, establishes that measurement at 170 feet.

At the beginning of trial, the parties stipulated that Enite Abshire died on January 3, 2000, but the parties presented no other evidence concerning the disposition of her estate. The Griffins assert in brief that it is not disputed that Enite Abshire died intestate and that Hazel Abshire is one of her forced heirs. However, the record does not support this argument, and the Abshires make no concessions on these issues in brief. Still, the record does establish that *if* Enite Abshire died intestate, Hazel Abshire was one of seven children and is therefore an heir.

Louisiana Civil Code Article 871 provides in part that "[s]uccession is the transmission of the estate of the deceased to his successors." Additionally, "[s]uccession occurs at the death of a person." La.Civ.Code art. 934. Acquisition of ownership of the deceased's estate by an heir occurs "[i]mmediately at the death of the decedent." La.Civ.Code art. 935. Therefore, Hazel Abshire became the owner of any property rights she inherited from her mother immediately upon the death of Enite Abshire. "[W]hen a *vendor* sells property which he does not own and *later acquires title*, ownership immediately vests in the buyer. This concept is known as the doctrine of after acquired title." *Mayo v. Simon*, 94-590, p. 3 (La.App. 3 Cir. 11/2/94), 646 So.2d 973, 975.

We must agree with the Abshires that there is insufficient evidence to establish that the Griffins acquired an ownership interest in the thirty-foot servitude of passage. However, the evidence does establish that they acquired whatever ownership in the thirty-foot servitude of passage that Hazel Abshire may have acquired as a result of her mother's death. We amend the trial court's judgment to that effect.

### *Damages*

As a part of their appeal, the Griffins assert that a reversal of the trial court's judgment concerning the width of the servitude of passage would revitalize their claim

for damages. We agree, and, because the record is complete before us, we address that issue rather than remand it to the trial court.

The evidence is uncontradicted that the Abshires have consistently harassed the Griffins over the servitude of passage as well as the boundary dispute since at least 1999. Kevin Griffin testified that the Abshires dug a ditch without his permission along the west portion of his property exactly eight feet east of the west boundary line of the thirty-foot servitude of passage for the specific purpose of prohibiting him from accessing his property from the servitude of passage.[7] Additionally, each time that he would walk across the servitude of passage for any purpose, the Abshires would complain to the law enforcement authorities that he was trespassing. According to Kevin Griffin, this occurred at least fifteen times between late 1999 and his filing suit.

Kevin Griffin also complained that the Abshire family ceased driving on the road situated on the thirty-foot strip along the west property line and began using only the eight feet east of that existing road. This assertion was supported by the testimony of Lawrence and Flo Dartez, neighbors who lived immediately south of Louisiana Highway 696 from the Griffins' property. According to Lawrence Dartez, approximately four to five years before the trial, the Abshires began driving exclusively down the eight-foot strip. A photograph of the servitude's intersection with Louisiana Highway 696 supports the testimony as it shows clearly an attempt by those using the servitude of passage to concentrate only on the easternmost portion despite the existence of a roadway to the west of the area now being used. The Abshires presented no evidence to contradict these assertions.

----

[7]While Doris John Abshire claims as authority for digging the ditch the thirty-eight-foot servitude of passage, we note that he had no ownership interest in the servitude of passage until the death of his mother.

10

"A trespass occurs when there is an unlawful physical invasion of the property or possession of another person." *Harrington v. Abshire*, 98-1651, 98-1652, p. 7 (La.App. 3 Cir. 3/31/99), 732 So.2d 677, 682. Additionally,

> In an action for trespass, it is incumbent upon the plaintiff to show damages based on the result or the consequences of an injury flowing from the act of trespass. *Bell v. Sediment Removers, Inc.*, 479 So.2d 1078 (La.App. 3 Cir.1985), *writ denied*, 481 So.2d 1350 (La.1986). The damages must be proved by a preponderance of the evidence, and this burden of proof may be met by either direct or circumstantial evidence. *Id.* One who is wronged by a trespass may recover general damages suffered, including mental and physical pain, anguish, distress, and inconvenience. *Ard v. Samedan Oil Corp.*, 483 So.2d 925 (La.1986). Mental anguish does not result of necessity from a trespass or the encroachment on a person's property; even though mental anguish may be compensable, it must be proven with sufficient evidence. *Bell*, 479 So.2d 1078. However, mental anguish does not require proof that medical or psychiatric care was required as a result of the incident, but minimal worry and inconvenience should not be compensated. *Phillips v. Town of Many*, 538 So.2d 745 (La.App. 3 Cir. 1989).

*Id.*

In their petition, the Griffins sought closure of the ditch, removal of the fence, and damages, but on appeal they seek only an award of damages. We find that the record supports an award of damages in the amount of $10,000.00.

## DISPOSITION

For the foregoing reasons, we reverse the trial court's determination that the right-of-way in question measured thirty-eight rather than thirty feet, amend the judgment to provide that the Griffins acquired whatever interest in the thirty-foot servitude of passage that Hazel Abshire may have acquired as a result of her mother's death, and render judgment awarding the Griffins $10,000.00 in damages. We affirm the judgment in all other respects and assess costs of this appeal to Doris John Abshire and Theresa Pommier Abshire.

**REVERSED IN PART; AMENDED IN PART; AFFIRMED IN PART; AND RENDERED IN PART.**

11